**Robert Charles COMER, Petitioner–Appellant,**

v.

**Terry L. STEWART, Director, Department of Corrections, Respondent–Appellee.**

No. 98–99003.

United States Court of Appeals, Ninth Circuit.

Filed June 6, 2000

Peter J. Eckerstrom, Tucson, Arizona; Julie S. Hall, Tucson, Arizona, for the petitioner-appellant.

Jon G. Anderson, Assistant Attorney General, Phoenix, Arizona, for the respondent-appellee.

Before: PREGERSON, FERGUSON, and RYMER, Circuit Judges.

Order by Judge FERGUSON; Partial Concurrence and Partial Dissent by Judge RYMER.

## ORDER

FERGUSON, Circuit Judge:

An appeal is pending in this court from the district court's denial of Robert Charles Comer's habeas corpus petition challenging the constitutionality of his state conviction and death sentence. The State of Arizona has filed a motion to dismiss Mr. Comer's appeal, contending that we lack jurisdiction to determine any aspect of his case because he has recently stated that he no longer wants this or any other federal court to hear it. Mr. Comer has also filed a pro se motion to dismiss

his appeal, in which he asserts many of the State's arguments and claims that he has not authorized his counsel to file any pleading on his behalf. Mr. Comer's counsel oppose these motions, asking that we order a "responsible procedure for determining" the validity of Mr. Comer's purported decision. We have vacated the date for oral argument on the merits of Mr. Comer's appeal. The motions will be held in abeyance until the district court holds an evidentiary hearing on the separate questions of whether Mr. Comer is competent to waive his appeal and, if so, whether his decision is voluntary. We publish this order because we believe that the public should be made aware of all matters pertaining to capital cases, including the reasoning underlying our decisions.

## I.

Mr. Comer was absent from the courtroom throughout his 1988 state trial for capital murder. After seven days of hearing evidence, a jury convicted him of one count of first degree murder, three counts of armed robbery, two counts of aggravated assault, two counts of kidnapping, two counts of sexual abuse, and three counts of sexual assault.

Mr. Comer was physically present in the courtroom for the first time on the day of sentencing. He was shackled to a wheelchair and, except for a cloth draped over his genitals, he was naked. His body was slumped to one side and his head drooped toward his shoulder. He had visible abrasions on his body. After asking both the court deputy and a prison psychiatrist whether Mr. Comer was conscious, the state trial judge sentenced him to death.

Mr. Comer appealed to the Arizona courts for relief from his conviction and sentence. On direct appeal, the Arizona Supreme Court affirmed. He then filed a petition for post-conviction relief in Arizona's Superior Court, which it denied. The Arizona Supreme Court denied his petition for review and the United States Supreme Court denied his petition for certiorari.

Mr. Comer initiated federal habeas corpus proceedings by filing in district court a preliminary petition for writ of habeas corpus, an application for appointment of counsel, and a request for a stay of execution. He signed the pleading himself, in which he described the procedural history of his case and alleged that, "I am being held in violation of my federal constitutional rights." Mr. Comer specifically requested that the district court appoint Peter Eckerstrom, his current counsel, and John R. Hannah, Jr., of the Law Offices of the Federal Public Defender in Arizona, to represent him. He also asked the court to both provide his attorneys with sufficient time to file an amended petition and to grant a stay of execution. In support of his request for the appointment of counsel, he signed an affidavit attesting to his indigence.

When Mr. Comer returned to state court with his federal constitutional claims, he personally verified the petition and repeated that he had given his consent to his counsel to proceed. He stated on that form that the petition contained every ground of which he was aware for granting a writ of habeas corpus. Further, he wrote that "Peter J. Eckerstrom is authorized to represent me in this matter. The pleadings he has already filed are authorized by me."

The federal district court denied his petition. He then appealed to this court for relief from the district court's decision. Although Mr. Comer's appeal raises serious questions about the constitutionality of his conviction and sentence, we must first decide the instant motions to dismiss the appeal.

## II.

The State claims in its motion that Mr. Comer does not wish to pursue further legal remedies. To bolster its argument that a hearing is unnecessary because Mr.

Comer is competent, the State attaches several letters that he has recently written. The first is a letter to Janet Napolitano, the Attorney General of Arizona. In the letter, Mr. Comer insists that he has never appealed his case, although, as described above, the record indicates otherwise. He also writes that he has never asked anyone to represent him, even though he in fact signed forms on two separate occasions requesting the district court to appoint his current counsel and authorizing them to proceed on his behalf. He next tells the Attorney General that he requested "that ZOG[1] lawyer Denise Young and the other ZOG lawyer, the one they call the 'attorney of record,' Julie Hall to pull my appeal." By contrast, his lead counsel, Peter Eckerstrom, asserts that he first received word of Mr. Comer's desire to waive federal review at the end of March, 2000, when a state judge forwarded letters from Mr. Comer expressing a desire to expedite his execution. Mr. Eckerstrom has also informed this court that Mr. Comer has never directly told him that he wishes to withdraw his consent from his lawyers to proceed. The petitioner's letter to the Attorney General adds that his lawyers are conspiring against him by acting on behalf of the "anti death penalty folks." He ends his letter by assuring the Attorney General that, "I'm sure if your people file a motion and there is something there from me in support of you all, well we should be able to get my happy feet on there [sic] merry way! One Nation under ZOG, AMEN!"

The State also attaches Mr. Comer's letter to the state judge who both presided over his trial and denied his state post-conviction petition. He makes clear in this letter that he believes that there is a vast conspiracy, involving the judiciary, his counsel, and the Attorney General's Office, designed to prolong his life. He tells the judge, whom he calls "Ol Judge," that he

"can see how all you little jews are getting rich here. You all just keep it rolling right along, collecting your dollars and rolling right along." He insists that, "NOBODY represents me for nothing," that he does not "believe in your ZOG system," and adds that, "your jew system applies not to me." Mr. Comer closes his letter by challenging the judge to "get together with your ZOG" people and obtain an execution warrant. He promises that, in exchange, "I'll get ya a free ticket, come see the show! Ha Ha Ha."

The State also attaches to its motion another letter from Mr. Comer to the state court judge. Mr. Comer maintains his belief that he has never once appealed his conviction and sentence nor asked his lawyers to proceed on his behalf. Although Mr. Comer's attorneys inform this court that they have previously visited and discussed his federal habeas corpus petition with him, he demands an explanation for why his appeal continues when, "I've never appealed anything and never asked for a lawyer nor ever saw any lawyers?" He suggests that the judge secure the services of a "ZOG bud" who might be willing to help him "over the curb!" He ends this letter by urging the state judge to, "think about it Ronnie. I know your hands are pretty much tied, but hell, even though you are a ZOG, you aren't half bad, so, *please* help me a little."

Finally, the State attaches a motion that Mr. Comer sent to the Supreme Court of Arizona requesting a warrant of execution. He twice insists in this motion that he has never appealed his case and adds that he has never asked for an attorney to represent him. He then claims that he instructed his attorney to withdraw his appeal, only to be ignored. He states that his lawyers are acting not in his interests, but for those of the "anti-death penalty focus agenda."

---

**1.** We believe that Mr. Comer uses the acronym "ZOG" to mean "Zionist Occupation Government." The State asserts that "ZOG" is in fact "206," which it characterizes as "a personal joke enjoyed by Appellant." It does not, however, share with us the content of the personal joke. In any event, we cannot resolve this factual dispute on appeal.

In addition to the State's motion to dismiss this appeal, we received Mr. Comer's pro se motion to dismiss, along with an accompanying note. Mr. Comer repeats, "I have never asked for nor required anyone to represent me." He writes that he knows that the "Attorney General has filled [sic] a motion also in this matter" and agrees with it. In the accompanying note, Mr. Comer writes that, "I have been incarcerated in a sensory deprivation unit for 12 year's [sic] now, longer than anyone in the United States...." He concedes that such conditions have "been known to cause a few people to wig out," but insists that he is not one of them. He warns us that "some might point out that I 'pace' my cell from morning to night," but asserts that he walks to avoid becoming "a veggie." He admits that "in a legal sense of sanity or competency, I may not be 100% sane or competent, but I assure you I'm not much less then [sic] 90%! Ask Anybody!" He stamps the note with a print of his right thumb "in case my 'attorney of record' denies this is me," and signs it "Gypsy."

### III.

The State of Arizona has moved this court to dismiss Mr. Comer's appeal for want of jurisdiction.[2] It argues that we do not have jurisdiction to order a hearing because his counsel have failed to present sufficient evidence showing that he is incompetent. Alternatively, it argues that the letters attached to its motion establish as a matter of law that he is competent to waive further federal habeas corpus proceedings and thus make a hearing unnecessary. These contentions have no merit.

Although we retain jurisdiction to resolve the State's motion to dismiss this appeal, we first remand this matter to the district court with instructions to conduct an evidentiary hearing. We remand because whether Mr. Comer has expressly or impliedly consented to the filing of any pleadings in federal court is a critical question of fact that we believe the district court is in a better position to resolve. Indeed, we have previously recognized the general presumption that an attorney is authorized to act on his client's behalf. *See, e.g., Nevius,* 105 F.3d at 459; *Lucky,* 86 F.3d at 925; *Deutscher v. Angelone,* 16 F.3d 981, 984 (9th Cir.1994); *cf. Roe v. Flores–Ortega,* —— U.S. ——, ——, 120 S.Ct. 1029, 1040, 145 L.Ed.2d 985 (2000) (recognizing that counsel have the authori-

**2.** The State writes that it "was under the misapprehension that Appellant's counsel would honor Appellant's requirement that they step aside ..." We reject the State's suggestion that counsel should follow their client's apparent instructions, proffered by the opposing party, for two reasons. First, we have previously recognized that there is a presumption that counsel are authorized to proceed on their client's behalf until the party seeking to show a lack of consent rebuts it. *See, e.g., Nevius v. Sumner,* 105 F.3d 453, 459 (9th Cir.1996); *Lucky v. Calderon,* 86 F.3d 923, 925 (9th Cir.1996). The determination as to whether a party has overcome the presumption requires a hearing in the district court. Until then, Mr. Comer's counsel are not required to abandon their client so that the State can execute him.

Second, although Mr. Comer's counsel are contravening their client's apparent desired course of action, they have an ethical obligation to ensure that he is acting in his own interests. Indeed, Rule 1.14 of the Model Rules of Professional Conduct, entitled "Client Under a Disability," provides that, "[a] lawyer may ... take other protective action with respect to a client, only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest." Model Rules of Professional Conduct Rule 1.14(b) (1999). The commentary elaborates that, "[w]hen the client is a minor or suffers from a mental disorder or disability ... maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, an incapacitated person may have no power to make legally binding decisions." Model Rules of Professional Conduct Rule 1.14 cmt. 1 (1999). As we describe below, Mr. Comer has a history of irrational behavior. If his attorneys followed Mr. Comer's current expressed desire, despite their apparently reasonable belief that he suffers from a mental disability, they would clearly violate the ethical rules governing their conduct.

ty to file an appeal on their client's behalf, even when the client does not expressly give them his consent to do so). When parties have challenged this presumption, we have remanded to the district court for a determination of whether counsel has acted with his client's consent. *See, e.g., Nevius,* 105 F.3d at 459; *Deutscher,* 16 F.3d at 983 (explaining that "[w]e remanded the case to the district court 'for the limited purpose of determining whether Deutscher authorized the filing of his first federal habeas petition'"); *Williams v. Lockhart,* 862 F.2d 155, 160 (8th Cir.1988) (remanding to the district court to determine the "critical question of fact" of whether a client authorized petition to be filed). The presumption exists in this case because Mr. Comer himself initiated federal proceedings and signed a verification form in which he wrote that, "Peter J. Eckerstrom is authorized to represent me in this matter." Given the State's contention that his lawyers do not have the authority to proceed on his behalf, we remand to the district court to determine whether he has validly withdrawn his express or implied consent to pursue further legal remedies.

In ordering a hearing, we are also guided by *Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), a case that is virtually indistinguishable from this one. There, as here, a petitioner who was sentenced to death in state court initiated federal habeas corpus review. *Id.* at 313, 86 S.Ct. 1505. After filing a petition for certiorari in the Supreme Court, he sought to "forego any further legal proceedings." *Id.* Like Mr. Comer's counsel, the petitioner's attorney in *Rees* raised the issue of his competence to withdraw his appeal. *Id.* Rather than dismiss the petition for want of jurisdiction, the Supreme Court remanded for a hearing in the district court. *Id.* at 313–14, 86 S.Ct. 1505. In so doing, it explained:

Whether or not Rees shall be allowed in these circumstances to withdraw his certiorari petition is a question which it is ultimately the responsibility of this Court to determine, in the resolution of which Rees' mental competence is of prime importance. We have therefore determined that, in aid of the proper exercise of this Court's certiorari jurisdiction, the Federal District Court in which this proceeding commenced should upon due notice to the State and all other interested parties make a judicial determination as to Rees' mental competence and render a report on the matter to us.

*Id.; see also Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ("[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but ... even one of these factors standing alone may, in some circumstances, be sufficient."); *Pate v. Robinson,* 383 U.S. 375, 385–86, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (holding that further inquiry is required where a defendant displays irrational behavior).

Like the Supreme Court in *Rees,* we require that the district court hold an evidentiary hearing to determine the validity of Mr. Comer's apparent decision to withdraw this appeal, should he continue to adhere to it.[3] Contrary to the State's assertion that Mr. Comer's attorneys "have presented no evidence of deterioration by Appellant," they have in fact pointed out that he has a history of irrational behavior. Mr. Comer's letters to the state judge who presided over his trial, the Attorney General's Office, and this court, in which he describes vast conspiracies against him and offers a version of his case's history that contradicts the record,

---

**3.** In a recent motion "to withdraw all motions filed by anyone in [sic] my behalf other than by myself," Mr. Comer apparently agrees with this holding. He writes, "We need to determine—is Robert C. Comer competent? I say yes, what say you? Does the law allow me to represent myself and withdraw my appeals if I am competent? I say yes, what say you?"

are certainly consistent with irrational behavior. Moreover, we and other courts have recognized that prison conditions remarkably similar to Mr. Comer's descriptions of his current confinement can adversely affect a person's mental health. *See Hoptowit v. Ray,* 682 F.2d 1237, 1257–58 (9th Cir.1982) ("The deprivation of nearly all fresh air and light, particularly when coupled with the guard's control over the window and the electric light, creates an extreme hazard to the physical and mental well-being of the prisoner."); *La-Reau v. MacDougall,* 473 F.2d 974, 978 (2d Cir.1972) ("We cannot approve of threatening an inmate's sanity and severing his contacts with reality by placing him in a dark cell almost continuously day and night."), *cert. denied,* 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973); *McClary v. Kelly,* 4 F.Supp.2d 195, 205–10 (W.D.N.Y. 1998) (noting that isolation can cause psychological harm). Indeed, Mr. Comer himself concedes in his note to this court that he is not "100% competent" and that the conditions of his confinement cause people to "wig out."

As the record before this court makes clear, this is not the first time Mr. Comer has displayed delusional and bizarre behavior in response to isolation. Mr. Comer was housed in the "Segregated Housing Unit" in California's Folsom Prison in 1982 and 1983, at the same time and in the same conditions a federal district court concluded constituted cruel and unusual punishment. *See Toussaint v. McCarthy,* 597 F.Supp. 1388, 1408–14 (N.D.Cal.1984), *reversed in part,* 801 F.2d 1080 (9th Cir. 1986).[4] Many years later, Mr. Comer described this period of his life in a letter to a friend. He wrote of how he always suspected that the walls were moving in and would crush him. He recalled "feeling

my mind shut down, 1 piece at a time," and becoming "like a robot, never knowing what day or time it was." He recounted how the rats scurried into his cell, hopped up on top of him, and made conversation. Sometimes, he tried to ignore them, but they kept talking to him.

We have grave concerns that a mentally disabled man may be seeking this court's assistance in ending his life, and therefore refuse to allow the State of Arizona to execute him at least until the district court holds an evidentiary hearing to determine if he can validly withdraw his consent to proceed with this appeal. In so doing, we reject the State's argument that a petitioner's letters or other expressions can establish as a matter of law that a petitioner is competent to waive further federal habeas corpus proceedings and thus, make a competency hearing unnecessary. In fact, the letters the State characterizes as merely "colorful," instead demonstrate the need for a hearing. In these letters, Mr. Comer asserts that: (1) he has never asked a lawyer to represent him; (2) he has never appealed his case; (3) no lawyer has ever visited him to discuss his case; and that (4) he informed his lead counsel to withdraw his appeal. As we stated earlier, the record directly contradicts each of these claims. Thus, the State's assertion that these letters establish Mr. Comer's competence and obviate the need for a hearing is meritless.

■ We also reject the State's argument that, in deciding whether a hearing is necessary, we should presume that Mr. Comer is competent to waive further federal review based on a state court's determination, thirteen years ago, that he was competent to stand trial. To be sure, a

---

4. The district court found that inmates spent 24 hours a day in windowless cells that were five to six feet wide and eight to ten feet long. *Id.* at 1394–95. Cells were cold, moist, and reeked of human excrement "caused by the bodily functions of inmates, eating, sleeping and eliminating under crowded conditions in the same immediate area." *Id.* at 1395–96.

The court also noted the "unrelenting nerveracking din that fills the segregation units," which caused "a profound impact on lockup inmates, some of whom consider it to be the single worst aspect of their confinement." *Id.* at 1397–98. Vermin, including cockroaches, mice, and rats "that thrive[d] upon the accumulated filth" infested the unit. *Id.* at 1400.

state court's determination on competency to waive further legal remedies may trigger a presumption of correctness. *See Demosthenes v. Baal,* 495 U.S. 731, 734–35, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990) (holding that state court's determination that the petitioner was competent to waive his right to pursue further post-conviction review of his claims was a factual one, and therefore presumed correct under the federal habeas corpus statute). But the presumption does not apply here because the determination of competency was made over a decade ago, before indications of Mr. Comer's delusional and bizarre behavior, demonstrated by his letters, emerged. *See Mata v. Johnson,* 210 F.3d 324, 332 (5th Cir.2000) (concluding that district court could not constitutionally base a finding of competency to waive further federal review on a twelve-year old finding where there was also evidence of recent irrational behavior). In short, the record before us does not allow us to presume that Mr. Comer is competent to withdraw this appeal. *Pate,* 383 U.S. at 385–86, 86 S.Ct. 836 (concluding that further inquiry is required where a defendant displays irrational behavior).

█ The State also argues that Mr. Comer's decision demonstrates his competence and obviates the need for a hearing because, even if we eventually grant him habeas relief, he "would again receive the death penalty." Unlike the State, we are unable to forecast what another court may or may not do with Mr. Comer's case. For the State to insist, however, that no matter what the federal courts decide, it will obtain another death sentence is totally inappropriate. We will not presume competency on so speculative a ground.

We direct the district court to determine "whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees,*

384 U.S. at 314, 86 S.Ct. 1505. In making such a determination, the district court should consider any medical and psychiatric evaluations the parties offer. *Id.; see also Mata,* 210 F.3d 324, 328 ("[T]here is a presumption that psychiatric and other medical examinations will be included in the decision making process."); *Hays v. Murphy,* 663 F.2d 1004, 1013–14 (10th Cir. 1981) (ordering the district court to consider expert information in determining the petitioner's competence to waive federal review).

## IV.

█ Even if the district court finds that Mr. Comer is competent to withdraw this appeal, it must also determine the separate question of whether his purported decision is voluntary. Mr. Comer's counsel assert that their client's conditions of confinement have extinguished his desire or will to live, thus rendering his apparent decision to withdraw this appeal involuntary.

█ The Supreme Court has held that a waiver of a petitioner's "right to proceed" is not valid unless, among other factors, it is "knowing, intelligent, *and voluntary.*" *Whitmore v. Arkansas,* 495 U.S. 149, 165, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (emphasis added). "A waiver is voluntary if, under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Doe,* 155 F.3d 1070, 1074 (9th Cir.1998). Put differently, a decision is involuntary if it stems from coercion—either mental or physical. *See, e.g., Brady v. United States,* 397 U.S. 742, 754, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Indeed, courts have recognized that a decision to waive the right to pursue legal remedies is involuntary if it results from duress, including conditions of confinement. *See, e.g., Smith v. Armontrout,* 812 F.2d 1050, 1058–59 (8th Cir.1987) (reviewing for error the district court's determination on whether petitioner's particular conditions

of confinement rendered his decision to waive appeals involuntary), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987); *Groseclose ex rel. Harries v. Dutton*, 594 F.Supp. 949, 961 (M.D.Tenn. 1984) ("In the judgment of this Court, the conditions of confinement inflicted on Mr. Harries are so adverse that they have caused him to waive his post-conviction remedies involuntarily."). Mr. Comer describes the conditions of his confinement in nothing short of Orwellian terms. He tells us that he is in "sensory deprivation," has no access to legal materials, is permitted nothing in his cell, and must walk continuously for fear of becoming a "veggie." Mr. Comer's choice between execution at the State's hands and remaining in the particular conditions of his confinement may be the type of "Hobson's choice" that renders his supposed decision to withdraw his appeal involuntary. *Cf. Gilbert v. Lockhart*, 930 F.2d 1356, 1360 (8th Cir.1991) (recognizing that providing defendant with "Hobson's choice" between incompetent lawyer or no lawyer violates right to counsel). The record is incomplete as it bears on Mr. Comer's prison conditions and the effect they are having on his purported decision to abandon his desire to live. Faced with this record, we cannot determine the voluntariness of Mr. Comer's decision and we must, of course, remand to the district court for a decision on this critical issue. The issue is whether Mr. Comer's conditions of confinement constitute punishment so harsh that he has been forced to abandon a natural desire to live. The district court shall conduct an evidentiary hearing to determine this issue as well as the separate issue of mental competence.

In ordering that the district court determine whether Mr. Comer's decision to withdraw his appeal is voluntary, we reject

the State's contention that no court can consider Mr. Comer's conditions of confinement unless brought as a § 1983 action. The State misses the point. We do not order the district court to consider the general question of whether the conditions on Arizona's death row violate the Eighth Amendment, but rather order it to make an individualized determination as to whether Mr. Comer's particular conditions of confinement have rendered his decision to withdraw this appeal involuntary.

In sum, the district court must conduct an evidentiary hearing to determine whether Mr. Comer is competent to withdraw his authorization from counsel to proceed with this appeal and whether that purported decision, should he continue to adhere to it, is voluntary.

## V.

The State's motion to dismiss will be held in abeyance until the district court determines the validity of Mr. Comer's purported decision to withdraw his appeal to this court. The district court is therefore directed to hold an evidentiary hearing to determine whether Mr. Comer is competent to withdraw his appeal. If it determines that he is competent to forego legal remedies, it must separately decide whether his decision to waive this appeal, should he continue to adhere to it, is voluntary.

IT IS SO ORDERED.

RYMER, Circuit Judge, dissenting in part and concurring in the judgment:

Although it is a close question whether a remand under *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), is required in the absence of evidence that casts doubt on Comer's competency,[1] I do

---

1. In *Rees* itself, a month after a petition for a writ of certiorari had been filed, Rees directed his counsel to withdraw the petition and forgo any further legal proceedings. Counsel indicated that he could not accede to these instructions without a psychiatric evaluation be-

cause evidence cast doubt on Rees's mental competency. Counsel then had the petitioner examined by a psychiatrist who filed a detailed report concluding that Rees was mentally incompetent. It was in light of these circumstances that the Supreme Court decid-

not disagree that it is at least an appropriate thing to do. However, the majority's opinion goes far beyond what is necessary to make this happen. I therefore dissent from all but the bottom line.

All that is necessary is a simple, one-sentence order which states:

We retain jurisdiction to resolve the State's motion to dismiss this appeal, as well as Comer's motion to discharge counsel and withdraw his appeal, but remand to the district court for the limited purpose, upon notice to the State and all interested parties, of making a judicial determination as to Comer's mental competence and rendering a report on the matter to us in accordance with *Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966).

Or, at most, a one-paragraph order that states:

Robert Charles Comer was convicted of one count of first degree murder, three counts of armed robbery, two counts of aggravated assault, two counts of kidnaping, two counts of sexual abuse, and three counts of sexual assault, for which he was sentenced to death. Following unsuccessful appeals, petitions for a writ of certiorari in the United States Supreme Court, and petitions for post-conviction relief in the Arizona courts, he filed a habeas petition in the United States District Court for the District of Arizona challenging the constitutionality of his conviction and sentence. The district court rejected these claims. Comer's counsel filed an appeal in this court February 18, 1998. Since then, Comer has written letters to the Attorney General of Arizona and to the state trial judge indicating that he did not ask for the appeal to be taken and wishes it to be withdrawn; he filed a "motion for issuance of warrant of execution" with the Arizona Supreme Court; and he has

filed a motion in this court to withdraw the appeal and to be represented only by himself. In view of these communications, Arizona moved to dismiss Comer's appeal. Comer's counsel[2] filed an opposition, asking us to order a "responsible procedure for determining whether Comer's recent requests to drop his appeals arise from a knowing, voluntary and intelligent decision." Arizona responds that no further proceeding is necessary, given the state trial court's determination that Comer was competent to stand trial and the absence of any indication in counsel's opposition that anything has changed in the meantime. However, guided by *Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), we believe the district court is in the best position to determine whether Comer "has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Id.* at 314, 86 S.Ct. 1505. Accordingly, we retain jurisdiction over all pending motions but remand to the district court for the limited purpose, upon notice to the State and all interested parties, of making a judicial determination as to Comer's mental competence and rendering a report on the matter to us "with all convenient speed." *Id.*

Instead of this, we have a fifteen-page opinion, essentially all but the bottom line of which is dicta.

The issue before the district court on remand is whether Comer "has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the

---

ed to enlist the assistance of the district court in determining Rees's mental competence. *See Rees,* 384 U.S. at 313, 86 S.Ct. 1505.

**2.** Comer's counsel of record is Peter J. Eckerstrom. He has filed papers in opposition to the state's motion to dismiss this appeal. Julie S. Hall is co-counsel.

other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees,* 384 U.S. at 314, 86 S.Ct. 1505. There is no cause or basis for us to comment now on whether Comer's communications are, or are not, "consistent with irrational behavior," as the majority seems to believe. Maj. op. at 915. There certainly is neither cause nor basis for holding that the presumption of correctness which attends the state court's determination of competency does not apply here at all because it was made over a decade ago "before indications of Mr. Comer's delusional and bizarre behavior, demonstrated by his letters, emerged," as the majority appears to do. Maj. op. at 917. For this the majority relies on *Mata v. Johnson,* 210 F.3d 324 (5th Cir.2000)—which it characterizes as concluding that the district court could not constitutionally base a finding of competency to waive further federal review on a twelve-year old finding where there was also evidence of recent irrational behavior, *see* maj. op. at 917—but its reliance is quite misplaced. In *Mata* there was "extensive evidence of *change*" in the petitioner's condition from the time of his original trial, *and* the court had before it a thirty year record of the petitioner's documented mental health problems, repeated suicide attempts, and numerous hunger strikes as well as reports of mental health experts showing delusional disorder with paranoid and erotomanic features and borderline personality organization, and medical records that reflected prescriptions for numerous psychotherapeutic and antidepressant medications to alleviate the symptoms of mental illness. *Id.* at 332 (emphasis added).[3] Nothing of the sort is before this court. Comer was found competent at the time of his trial; he has no record of mental problems; and there is no indication of any change in mental competence since Comer's competency hearing. While

the state court's competency determination is not necessarily the last word, the record in this case is by no means such as to call for us to obliterate the presumption in advance of consideration by the district court. Rather, the clearly applicable rule is that a state court's determination of a defendant's competency is presumed to be correct. 28 U.S.C. § 2254(d) (1995) (pre-AEDPA); *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990).

Indeed, read as a whole, it is difficult to see how Comer's communications are so indicative of "delusional and bizarre" behavior as to deprive him of the presumption of competence to which I believe he is entitled. Here, for example, is what Comer says in his pro se motion to this court to withdraw the appeal:

> *I have made my intentions clear, so why do I still have lawyers trying to represent me in this court? Is it not my right to not only represent myself, but also if I choose, to withdraw my appeals? I may not have access to a law library, or a copy machine, or a notary public, or funds to represent myself in a mannor pleasing to the American Bar, but it's not like I am on trial for a murder. I have been found guilty by a jury of my peer's. To wave one's appeals or represent one's self at this level does not require one to be a rocket scientist, only to be aware, with the bare minimum of legal skills, both of which I am. I cannot understand all this about my competency or the conditions of my incarceration. I am a very open, loving person most of the time. I enjoy seeing the sun when I can. I love hearing a bird chirp. Life is good & dear, even under oppressive conditions. There is nothing wrong in my head. I don't use drugs, legal or illegal, I know where I am 24 hours a day and I don't "pre-*

**3.** *See also Vargas v. Lambert,* 159 F.3d 1161, 1168 (9th Cir.1998) (accepting state court finding that inmate was competent as of last determination but concluding that a substan-

tial issue existed as to present competency in light of third party's submission of "meaningful evidence" that mental condition had deteriorated since state court hearing).

*tend" to be anywhere else or somebody else. I don't talk to myself, I don't eat thing's we are not supposed to eat, I can add, I can think, I can even wish, hope & dream. I wish I was a law abiding person and I hope to pull this darn appeal and I'm going to dream about my girl when I go to sleep tonight! Now that is a lot more than my victim Larry Pritchard has going for him. The Attorney General has filed motions to, and I've seen one thing I disagree with. It's in there "Appellee's Reply to Opposition to Appellee's Motion to Dismiss Appeal". It's on page # 8 at line 19–20. The "misery" of prison life is not why I've pulled (attempting too!) my appeal. A few of the reason's are of a personal nature and will stay that way. I will say, it is just time to end it. And I don't want to hurt anybody else. I've a lot of hate in me, that is what those lawyer's mean about the incarceration. But thats for somebody else to worry about, how to quit creating monsters. For us, this court & myself & Larry Pritchard, we need to determine—is Robert C. Comer competent? I say yes, what say you? Does the law allow me to represent myself & withdraw my appeals if I am competent? I say yes, what say you? Come on folks, this has gone on long enough. I submit this for your ruling and I ask that you please rule on this as soon as you can.*

*With respect*

*Robert C Comer*

*P.S. Julie Hall or Peter Eckerstrom or any other lawyer does not work for me nor represent me nor my views.*

*Upon further review, I'd have it be known I would not cooperate in any form with any mental health experts. I've about as much use for them as I do lawyers. Shrinks are just another scam to separate weak people from there money. It is human nature to stand back*

*up after being knocked down, don't need a head doctor to tell you that, just do it. So I also would not be amendable to a 30 day delay. I will be seeing Julie Hall on Tuesday, May 2nd, to once again formally fire her & Peter Eckerstrom, hopefully this time they will listen, but somehow I'm not faithful that will hapen.*

*Your honor's, these people, my so called counsel, had nothing bad to say about me over the last 13 years. Now, as I attempt to assert my right's, I have become, "incompetent", "irrational", "self-destructive", "delusional", "paranoid", "schizophrenic", according to my lawyers. I fear what they are gonna call me next week! Since I do not agree with them, there must be something wrong with me! But I'll tell you, after my short dealings with these lawyer's, I'd like to ask if they are competent, as they go against there clients wishes, are they delusional because they know for a fact there is nothing wrong with me. It just seems they are the ones with problems. Okay, judges, I've had my say, again. It's up to you now, let's end this now so I don't have to spend the next couple of years having to print letters and bug other courts. Once again, thank-you for you consideration.*

*Respectfully*

*Robert C. Comer*

To me, at least, this does not indicate "delusional and bizarre behavior" such as to rob Comer of his right to have the court presume he is competent until someone with a sufficient interest in the proceedings proves otherwise by clear evidence— or to have the federal court presume that the state court's determination of competence is correct in the absence of any "meaningful evidence" to the contrary. Suffice it to say, this should all be up to the district court on remand.[4]

The same is true of the voluntariness discussion. There is neither cause nor

---

**4.** *See Mata,* 210 F.3d 324, 326 (*Rees* "clearly affords the district court a measure of discretion in determining the type and extent of procedures necessary to decide the issue of competency").

basis for the majority's view that the conditions of confinement as described by Comer are "Orwellian" or may put him in a " 'Hobson's choice' that renders his supposed decision to withdraw his appeal involuntary." [5] Maj. op. at 917–18. Comer anticipated this argument in his motion to withdraw the appeal and flatly states that he is *not* one of those who has wigged out from the type of incarceration to which he has been subjected. Regardless, it is up to the district court (not us) to determine the voluntariness of Comer's decision in the first instance. And in making this determination, the district court should not mistake gratis observations for law. We have no law on the extent to which (if at all) a capital inmate's conditions of confinement factor into the "rational choice" test. Nor is there cause or any basis for supposing that the standard should be, as the majority states, whether "Comer's conditions of confinement constitute punishment so harsh that he has been forced to abandon a natural desire to live." Maj. op. at 918. Notably, the only other courts of appeals to consider the effect of prison conditions on a capital inmate's decision to abandon review have spoken only after a district court determination, and both have upheld determinations that the inmate's decision was not involuntary. *See Wilson v. Lane*, 870 F.2d 1250, 1254 (7th Cir.1989)

(prisoner's decision to withdraw appeal not rendered involuntary on account of conditions of confinement; he indicated and district court found it was based on quality of life due to the fact, not conditions, of confinement); *Smith By and Through Missouri Public Defender Commission v. Armontrout*, 812 F.2d 1050, 1058 (8th Cir. 1987) (the district court was justified in concluding that the inmate's continued adherence to his decision to withdraw an appeal could be voluntary "even if death row's conditions were in violation of the Eighth Amendment").

Finally, it should be clear that we are not ruling on either the State's motion to dismiss or Comer's motion to discharge counsel and to withdraw his appeal. In particular, the state argues that Eckerstrom lacks standing and we lack jurisdiction under *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), and its progeny. However, we cannot make any definitive ruling on either point until we have the district court's findings in hand as both contentions turn on Comer's competency. The majority's discussion about Comer's presumptive consent to Eckerstrom's representation and to the filing of papers in this court is beside the point. Assuming that Eckerstrom and Hall have enough standing to interpose an objection to the state's motion to dismiss

---

**5.** It is simply not correct that Comer has conceded the point, as the majority implies by stating that he "concedes in his note to this court that he is not '100% competent' and that the conditions of his confinement cause people to 'wig out.' " Maj. op. at 916. Comer's note (received by the Clerk April 12, 2000) reads in full as follows:

> I suspect the anti-death penalty people, ie: Julie Hall, will try to call into question my sanity or my competency. I'd like the court to know I have been incarcerated in a sensory deprivation unit for 12 year's now, longer than anyone in the United States according to one study. It is a fact this type of incarceration has been known to cause a few people to wig out. I however am *not* one of those. I am allowed nothing in my cell because of my past attitude toward violence, yet I go on and survive totally intact. Some might point out that I "pace" my cell from morning to night. I do not, I "walk". I could sit on my bunk and become a veggie I

> suppose, but I walk. I do not smell stuff burning, I do not see stuff that is not there, I am well aware of where I am and of what I do. I can recall an hour ago, last week, or last year with no problem. When I can get a crossword puzzle, I don't have a fight in my brain to find words. I don't escape reality by hidding in my head. I would agree I am not very "competent" in law. Had I known it would have gone on this long, I would have learned some law, but I do know that according to law I am way competent and way sane and I do know that this action will lead to my ceasing to suck air if your court decides in my favor. Now, in a legal sense of sanity or competency, I may not be 100% sane or competent, but I assure you I'm not much less than 90%! Ask anybody! A heart full of hate don't make one insane nor incompetent.
> Thank you for your considerations
> Gypsy
> Aka
> Robert C. Comer

on the ground of Comer's lack of competency, Comer has moved to discharge them and to dismiss his appeal. This makes the cases upon which the majority relies [6] inapposite as they arose in very different contexts. Indeed, the procedural posture of this case is not materially different from *Rees*, where the petition for certiorari was counseled but the petitioner then directed counsel to withdraw the petition and forgo further proceedings. Just as the Supreme Court refrained from instructing the district court on presumptions, so should we.

In sum, both motions remain for plenary consideration after the district court's *Rees* determination is completed.

---

6. *Nevius v. Sumner*, 105 F.3d 453, 459 (9th Cir.1996) (invoking presumption of consent when a petitioner who sought to avoid the restrictions on second habeas petitions claimed he had not authorized his attorney to file the first petition); *Lucky v. Calderon*, 86 F.3d 923, 925 (9th Cir.1996) (indicating that the presumption of consent to petition filed by counsel without the petitioner's signature is rebutted by petitioner's failure to respond to counsel but that petitioner could later authorize it by showing that the petition is presently authorized).