**Don Jay MILLER, By and Through Nancy Follin JONES, Petitioner–Appellant,**

v.

**Terry STEWART, et al., Respondents–Appellees.**

**No. 00–99017.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted by Telephone Nov. 7, 2000.

Filed Nov. 7, 2000.

---

Julie S. Hall, Esq., Tucson, Arizona for the petitioner–appellant.

Harriette P. Levitt, Esq., Tucson, Arizona, Advisory Counsel for the petitioner–appellant.

Dawn Marie Northup, Office of the Attorney General, Phoenix, Arizona, for the respondents-appellees.

Before: REINHARDT, RYMER, and FISHER, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge.

Nancy Follin Jones, an attorney with the Pima County Public Defenders Office (PCPD), appeals the denial of her motion

to proceed as next friend and to stay the execution of Don Jay Miller, an Arizona prisoner under sentence of death who has declined to seek federal habeas relief and refused to be represented in doing so by Jones or PCPD. Miller's execution is currently scheduled for November 8, 2000 at 3:00 p.m. The motion was filed November 5. On November 6, the district court found that Jones lacks the requisite standing to maintain this action as Miller's next friend. Accordingly, it denied Jones's motion to proceed as next friend and for a stay, and dismissed the petition for writ of habeas corpus filed by Jones for lack of jurisdiction. The court issued a certificate of appealability. Jones has appealed from the district court's order, and requests a stay of execution pending our consideration of it. Having heard argument by telephone, we grant the stay, and remand for an evidentiary hearing.

■ Don Miller is what is known in the death penalty trade as "a volunteer." He has stated that he wishes to be executed. The State insists that the federal courts must presume Miller is competent to make this choice, and that he does so voluntarily and intelligently, because the state superior court in a 1998 *Faretta*[1] hearing found Miller competent to represent himself in state post-conviction proceedings. The State acknowledges, however, that the *Faretta* hearing did not purport to determine Miller's competence to choose to die or the voluntariness of *that* decision. Because no court has ever made the appropriate inquiry and because current evidence suggests that Miller may not be competent, we grant the motion for stay of execution and remand this matter to the district court for an evidentiary hearing.

■ Miller's hearing in state court two years ago was on a far different matter. It was a *Faretta* hearing—a hearing on whether Miller was competent to elect to represent himself in his effort to *defeat* the State's decision to execute him. In *Faretta*, the Supreme Court held that individuals have a constitutional right to represent themselves. See *Faretta*, 422 U.S. at 806, 95 S.Ct. 2525. In Miller's case, all the state court determined was that he was able to meet the minimal standard necessary to exercise that constitutional right. See *id.* at 835, 95 S.Ct. 2525 (defendant must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'"). A far different question, however, is raised when the issue posed is whether an individual is competent to choose to be executed—in short, to choose death, and whether he has made *that* choice voluntarily, knowingly, and intelligently. See *Rees v. Peyton*, 384 U.S. 312, 313, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966) (directing the district court to determine Rees's mental competence "*in the present posture of things*, that is, whether he has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises") (emphasis added). Whether someone is competent to waive counsel, and whether he has done so voluntarily, knowingly and intelligently, raises different questions and requires different findings than whether someone is competent to elect to die. See *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; cf. *Rees*, 384 U.S. at 313, 86 S.Ct. 1505. Because here the state court determination of competency and voluntariness stemmed from a different inquiry, in this case, unlike in *Brewer*[2] and *Baal*,[3] there is no competency deter-

---

1. See *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

2. See *Brewer v. Lewis*, 989 F.2d 1021, 1027 (9th Cir.1993).

3. See *Demosthenes v. Baal*, 495 U.S. 731, 732–33, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990).

mination to which federal courts must give deference.

The *Faretta* findings were made on October 26, 1998 at a time when Miller was confined in county jail and was still determined to fight his conviction and sentence. The State's psychiatric expert, and the state court, found Miller competent to choose to represent himself when he was still fighting for his life. Dr. Morenz, a psychiatrist, expressly states that when he opined that Miller in 1998 was competent to represent himself, Morenz "placed great emphasis on [Miller's] indication that he would be pursuing his federal appeals with counsel." *See* Declaration by Barry Morenz, November 2, 2000; *see also* Morenz's August 6, 1998 Psychiatric Evaluation of Miller.[4] Now the States urges us to defer to that determination—that Miller was competent to choose to represent himself—for purposes of resolving the far different question of whether Miller is competent to choose to die.

Moreover, it is undisputed that Miller's circumstances have changed drastically since the time of the 1998 *Faretta* hearing and even since the time of the subsequent reaffirmation of the state court order. Confined in maximum security and all but totally isolated in "SMU II" on Arizona's death row, Miller has given up his fight for life. Yet no court has ever made any competency determination since this change.

■ Here, the preliminary issue is standing. In order to establish standing, the next friend must: (1) provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action; and (2) be truly dedicated to the best interests of the person on whose behalf he or she seeks to litigate and have some significant relationship with the real party in interest. No one questions Nancy Jones's dedication or significant relationship with Miller.

In the absence of a prior state court finding to which we defer, we must look to the entire record. Mr. Miller's history of depression and abuse are well-documented. The record shows that Mr. Miller was physically, sexually, and psychologically abused as a child. He grew up in an environment of abuse and neglect. His mother, who at times ran a "massage parlor" and at other times was a stripper, once chased him with a butcher knife and put out cigarettes on the body of one of his siblings. He has a documented history of suicidal impulses, depression, alcohol abuse, and physical injuries. Significantly, in 1982, as a juvenile offender, he threat-

4. In that report, in determining Miller's competence to represent himself, Dr. Miller relied on the following facts: "Mr. Miller understood that he has been convicted of first-degree murder and sentenced to death. He understood that his current attorneys were Brian Metcalf and Nancy Jones. He indicates that his attorneys will not raise some issues that he believes are relevant in his appeal. He states that these issues particularly have to do with the performance of prior attorneys that have represented him. (Also, he states there are other legal issues that his attorneys do not feel are relevant that he wishes to be raised. Therefore, at this point, he would prefer to represent himself. Mr. Miller indicated that he believed that the jury instructions that the judge gave at trial were inadequate. He believes his attorney's closing arguments were also inadequate. He understood that errors found by the appellate court could be harmless, procedural, or fundamental, which may or may not result in his conviction being overturned. He indicates that his current attorney is primarily interested in having his sentence reduced from the death penalty to natural life.) [¶] Mr. Miller also understood that he had an option to forego further state appeals and to begin a federal appeals process. Mr. Miller indicates that he has been in contact with some federal attorneys who will represent him in the federal stage of the appeals' process. He is comfortable at this point with their representing him later on. He also continues to consider waiving further state appeals and going directly to the federal appeals' stage. Mr. Miller believes that he has a reasonable chance to prevail with his appeals. He also believes that he has several years of appeals before the imposition of the death penalty would actually take place."

ened suicide should he not be released from confinement.

In recent affidavits, both of the psychiatric experts who examined Miller for purposes of the 1998 state *Faretta* hearing adamantly state that their examinations were made for the sole purpose of determining whether Mr. Miller was competent to waive counsel, not for the purpose of determining whether Mr. Miller is competent to choose to die. Both experts state that it is well accepted that conditions such as those present in the SMU II where Miller is housed can cause psychological decompensation to the point that individuals may become incompetent. Both experts note that due to Mr. Miller's background, he is highly susceptible to the effects of physical isolation on death row. Neither expert believes that Miller's competency to make the decision to die should be assumed at this point.

In this case we deem it significant that a substantial question has been raised regarding recent changes to Miller's mental condition. As noted, the doctors who previously found him competent to waive counsel now raise serious questions regarding his competency to make the decision to die. In addition, Julie Hall, counsel for the Arizona Capital Representation Project, has submitted a declaration stating that Miller told her he was willing to pay with his life to escape the conditions of SMU II. Hall, who has been in regular communication with Miller, attests that Miller's mental state has declined, he has become increasingly depressed, and he has resigned himself to dying. In July of this year, Miller suffered auditory hallucinations. Finally, this court in *Comer* recognized the harsh conditions of death row in Arizona and its possible effects on those who live there, and on that basis ordered an evidentiary hearing. *See Comer v. Stewart,* 215 F.3d 910, 916 (9th Cir.2000) ("we and other courts have recognized that prison conditions remarkably similar to Mr. Comer's descriptions of his current confinement can adversely affect a person's mental health"). Mr. Comer was also confined in SMU II. The district court

distinguished *Comer* in part on the ground that there the defendant sought to withdraw a habeas application while here the defendant declined to file one. We conclude that the same legal analysis as to competency is applicable in both circumstances.

■ In this narrow circumstance in which no court has ever determined Mr. Miller's competency to choose to die or the voluntariness of his decision, there is sufficient evidence in the record to require an evidentiary hearing as to Miller's competency. Such evidence is sufficient to establish jurisdiction for that purpose in the federal courts and to mandate a stay in this case. *See Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). It is also sufficient to permit next friend status for the evidentiary proceedings.

**Stay Granted; Remanded for Further Proceedings in Conformance with this Opinion.**

FISHER, Circuit Judge, Concurring:

Under *Whitmore,* the "prerequisite for 'next friend' standing is not satisfied where an evidentiary hearing shows that the defendant has given a knowing, intelligent, and voluntary waiver of his right to proceed, and his access to court is otherwise unimpeded." *Whitmore v. Arkansas,* 495 U.S. 149, 165, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (citing *Gilmore v. Utah,* 429 U.S. 1012, 1017, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976) (Stevens, J., concurring)). The evidentiary hearing the Court reviewed in *Whitmore* addressed the specific question whether the defendant "had 'the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence.'" *Id.* (quoting *Simmons v. State,* 298 Ark. 193, 766 S.W.2d 422, 423 (1989)). The Court analyzed the Arkansas trial court proceedings as follows:

Simmons was questioned by counsel and the trial court concerning his choice to accept the death sentence, and his an-

swers demonstrate that he appreciated the consequences of that decision. He indicated that he understood several possible grounds for appeal, which had been explained to him by counsel, but informed the court that he was "not seeking any technicalities." In a psychiatric interview, Simmons stated that he would consider it "a terrible miscarriage of justice for a person to kill people and not be executed," and there was no meaningful evidence that he was suffering from a mental disease, disorder, or defect that substantially affected his capacity to make an intelligent decision. *Id.* at 165–66, 110 S.Ct. 1717 (citing *Rees v. Peyton,* 384 U.S. 312, 314, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966)).[1]

Similarly in *Demosthenes v. Baal,* 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990), there had been a full evidentiary hearing following Baal's decision to abandon his petition for postconviction relief regarding the specific question of his competency to do so. Again, the Court summarized the nature and substance of that hearing:

> At that hearing, Baal testified that he did not want to continue any postconviction proceedings. He further testified that he knew the date he would be put to death, the reason he would be put to death, and that his waiver of postconviction relief would result in his death. A state psychiatrist testified that Baal was competent; a state prison official who had observed Baal also testified as to Baal's competence. The court also reviewed the reports of three psychiatrists who had examined Baal and concluded that he was competent to stand trial. Based on this evidence, the court held that Baal was aware of his impending execution and of the reason for it, and thus was sane under the test set forth in

*Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The court further held that Baal was in control of his faculties, was competent to choose to decline to pursue an appeal, and had made an intelligent waiver of his right to pursue postconviction relief. *Id.* at 732–33, 110 S.Ct. 2223.

This court applied *Whitmore* and *Baal* in *Brewer v. Lewis,* 989 F.2d 1021 (9th Cir.1993), denying next friend standing to petitioner because she had not presented meaningful evidence of incompetency sufficient to overcome two prior state trial court findings of competency, each based on a full hearing where the trial court questioned Brewer personally. Unlike these cases, I believe Miller's state court competency hearings did not address the competency issue presented here. Accordingly, for the reasons set forth by Judge Reinhardt and as amplified below, I concur in the order of stay and remand.

There has not been a hearing focused on Miller's competency to waive or abandon his right of appeal and to submit to execution. Rather, the state trial court hearings on October 26, 1998 and December 13, 1999 concerned Miller's competency to represent himself and *pursue* his appeal. Although Judge Rymer cites to Miller's statement that he "has been fighting for his execution since 1996," the record of the hearings reflects an assumption that Miller was planning to challenge his conviction, not abandon it. Indeed, the two doctors who examined Miller's competency in 1998 have stated they did not consider the impact of incarceration and proceeded on the assumption he was planning to appeal. Neither evaluated him for purposes of waiving his appeal rights. Moreover, the record of the December 13 hearing consists of a minute order and does not reveal

---

1. In *Rees v. Peyton,* the Court reviewed a petitioner's request to withdraw, against the advice of his current counsel, a petition challenging his death sentence. Noting concerns about the petitioner's mental health and the absence of a prior judicial determination of competency, the Court declined to dismiss the

petition and ordered the district court to conduct a hearing to determine "whether [the petitioner] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation ...." 384 U.S. at 314, 86 S.Ct. 1505.

the contents of the court's discussion with Miller. Accordingly, I do not believe the findings of Miller's competency to be of the same character and weight as a determination focused and based on evidence directly relevant to voluntarily submitting to execution.

Absent such a state court determination, I believe Jones has presented sufficient meaningful evidence to raise a question of Miller's competency to waive his appeal rights—at least enough to warrant an evidentiary hearing as to Miller's current competency. First, although Miller directly and through his advisory counsel insists that he is competent and his actions are voluntary, crediting his position begs the question of his competence.

Second, both Doctors Morenz and Morris qualify the nature and scope of their competency evaluations provided in 1998, stating they did not consider the impact on Miller of death row living conditions and concluding that "further evaluation of Miller is definitely warranted to ascertain whether his psychological conditions have deteriorated to the point that he is incompetent to be executed ...." Admittedly, neither has seen or spoken to Miller directly since 1998, but they are not strangers to Miller, know his troubled history and their speculation as to the potential for adverse effects of incarceration in SMU II finds support in this court's own assessment of that facility in *Comer v. Stewart*, 215 F.3d 910, 917–18 (9th Cir.2000).

Third, the two state doctors who evaluated Miller on October 18, 2000, although purporting to give Miller a clean bill of health, acknowledged that he had been suffering "temporary auditory hallucinations"—hearing voices—as a result of working on at hard labor. Moreover, his decision to abandon his appeals once he entered SMU II suggests the conditions of confinement may indeed have adversely affected his mental state.

In sum, there has never been a hearing focused on Miller's competency to waive his appeal rights and submit to execution, the issue instead being litigated on affidavits and representations and arguments of counsel. On this record, I believe there is a substantial question as to Miller's present competence sufficient to support this court's jurisdiction to issue a stay of execution pending an evidentiary hearing. If Miller is found currently incompetent, then Jones would have standing to file habeas proceedings as his next friend; otherwise, she would not. (Because the Arizona Supreme Court on November 6, 2000 granted Jones' motion to appear as next friend, although denying her motion to stay execution, I am assuming she meets the second prong of the next-friend standing test of *Whitmore*.)

RYMER, Circuit Judge, dissenting.

I dissent from the unprecedented view that there is a difference of constitutional magnitude between what the majority characterizes as "competency to choose to die or the voluntariness of his decision," maj. op. at 1252, and competency to make legal decisions and the voluntariness of those decisions—including the decision by a prisoner under sentence of death not to file for habeas relief in federal court. A state court determined that Miller was competent and intelligently, knowingly and voluntarily chose to represent himself. There is no substantial evidence that his mental condition or ability to make rational decisions has changed. All of the evidence is to the contrary: the state court's determination in 1998 and reaffirmation in December 1999; Miller's own statements then, and currently, that he does not want to be represented by the lawyers who seek to be his "next friend," that he does not want the warrant of execution (now set for November 8 at 3:00 p.m.) to be suspended, and that he understands the consequences; and the report of a Department of Correction psychiatrist and psychologist who examined Miller in October 2000 and found no evidence of any major mental illness. As Nancy Follin Jones, the putative "next friend" has produced no meaningful evidence of mental incompetence, I would affirm the district court.

As set forth in detail in *State v. Miller*, 186 Ariz. 314, 921 P.2d 1151 (1996), Miller was convicted of first degree murder and kidnaping, and sentenced to death. Following the Arizona Supreme Court's denial of Miller's direct appeal, he filed a pro per notice of post-conviction relief in the trial court. The court appointed the Pima County Public Defender (PCPD), who had represented Miller on appeal, to prepare a supplemental post-conviction petition. However, Miller sought to represent himself. PCPD challenged his ability to waive counsel, and the trial court authorized an examination by PCPD's expert, Dr. Larry Morris. After receiving Morris's report, PCPD chose not to present evidence of incompetency. The trial court then appointed Dr. Barry Morenz to evaluate Miller and report to the court. Morenz noted that Miller had recently been moved to the prison's Special Management Unit II (SMU II), which Miller described as "very oppressive," and that Miller was enjoying a "slightly greater measure of freedom" as a result of being temporarily housed at the time at the Pima County Jail. Miller was diagnosed with polysubstance dependence (in remission) and, provisionally, an antisocial personality disorder. In his opinion, Miller was "competent to make informed legal choices," including the choice to waive counsel.

The trial court conducted a hearing on Miller's motion to proceed pro per on October 26, 1998, and found that Miller knowingly, intelligently and voluntarily waived his right to counsel in post-conviction proceedings and granted his motion for self-representation. The court appointed Harriette Levitt as advisory counsel.

On December 13, 1999, the state court held another hearing at which it reaffirmed Miller's competency to represent himself and set a firm March 13, 2000 deadline for filing a post-conviction petition. Although Miller filed a request for early relief on his involuntary confession claim, he failed to file further pleadings after the court ordered him to file all potential claims simultaneously. On March 31, 2000

the state court dismissed Miller's post-conviction petition on the ground that the involuntary confession claim had been decided on appeal. He did not seek review in the Arizona Supreme Court.

PCPD sought to intervene and filed a motion for reconsideration, but Miller's advisory counsel informed the court that Miller opposed PCPD's intervention, did not want further delays in the case, and wanted a warrant of execution to issue. The court found that PCPD lacked standing and denied the motion. When PCPD sought special action relief in the Arizona Supreme Court, Miller filed an affidavit pro per stating that he did not wish to pursue issues regarding sentencing in a Rule 32 petition, that he requested that the warrant of execution be issued, and that he did not wish the warrant to be suspended. As he explained: "I chose not to raise the issue, fully understanding the potential consequences of my decision." On September 26 the Arizona Supreme Court declined to accept jurisdiction of the special action petition and granted the State's motion for a warrant of execution. PCPD filed a petition for certiorari to the United States Supreme Court and a motion for stay of execution, which are still pending.

On October 24, the Federal Public Defender (FPD) filed a motion in district court requesting a limited appointment of counsel for the purpose of meeting with Miller to explain the federal habeas review process. Miller indicated that he did not wish to pursue federal habeas review, but said he did not object to the FPD's visits. The district court denied the motion for limited appointment but granted visitation rights.

Miller was examined on October 18, 2000 by a psychologist and a psychiatrist employed by the Arizona Department of Corrections after issuance of the pending warrant of execution. They found no evidence of any major mental illness. Their report notes that Miller has made no requests for mental health services or for treatment since his incarceration in 1993,

nor have any observations of significant mental or emotional distress been made with one exception in July 2000 when Miller was stressed from work on a hard-labor crew.

Finally, on November 6, Miller's advisory counsel filed a declaration based on her most recent conversation with Miller. It represents that Miller states that "the conditions of incarceration in SMU II and his mental health or depression have nothing to do with this decision." Miller further states that he has been fighting for his execution since 1996, two years before the move to SMU II, and that the only reason he gave up his appeal is the fact that he does not wish to grow old in prison.

Jones and FPD filed several other motions regarding visitation, but these are not relevant to disposition of this appeal.[1]

"The burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Whitmore,* 495 U.S. at 164, 110 S.Ct. 1717. In order clearly to establish standing, a petitioner must present "meaningful evidence that [the petitioner] was *suffering from a mental disease, disorder,* or defect that substantially affected his capacity to make an intelligent decision." *Id.* at 166, 110 S.Ct. 1717.

This appeal turns on whether Jones presented meaningful evidence that Miller's mental condition has deteriorated since December 13, 1999 when the state trial court reaffirmed his competence and understanding of the consequences of failing to pursue post-conviction relief (originally determined October 26, 1998). We presume the correctness of the trial court's determination. *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990) (per curiam). Jones does not suggest, nor did the district court find, any basis upon which to conclude that the state court's finding was not fairly supported.

Jones argues that Miller is not presently capable of making a knowing, voluntary and intelligent waiver of his right to counsel in federal court and his right to seek a stay of execution and a writ of habeas corpus because the conditions of confinement at the Arizona State Prison's SMU II were never considered at the time of the state court competency determination. She relies upon *Comer v. Stewart,* 215 F.3d 910, 917–18 (9th Cir.2000), to contend that the effect of prison conditions—specifically those in SMU II—must be considered as a separate inquiry into the voluntariness of such a waiver. In addition to a number of older records, Jones submitted her own declaration, a declaration by Julie Hall (Jones's counsel) which questions the voluntariness of Miller's actions, and the declarations of the two physicians who examined Miller in 1998, to demonstrate that Miller suffers from a serious, long-term history of depression and post-traumatic stress disorder that caused him to succumb to the effects of solitary confinement and abuse at SMU II.

Jones's declaration sets forth her belief that Miller "is operating under a mental disability that prevents him seeking relief on his own behalf in the courts." She states that it is "the result of life long trauma that has resulted in severe depression and symptoms of post-traumatic stress disorder combined with the psychologically disabling conditions of solitary confinement." The declarations by Dr. Morris and Dr. Morenz say the same thing; that in their 1998 evaluations, neither was asked to consider what impact the conditions of confinement may have had on Miller's decision to waive counsel; that each has read information regarding the daily living conditions and virtual total physical isolation of death row inmates at SMU II; that based upon well-accepted psychological studies on the effects of physical isolation on subjects kept under

---

1. In an order issued November 6, 2000, the Arizona Supreme Court granted Jones's motion to appear as "next friend" but denied her motion for stay of execution. The Court subsequently clarified its order as granting "next friend" status only for the purpose of ruling on her motion in the Supreme Court for a stay of execution.

conditions akin to those of death row inmates at SMU II, such conditions can cause psychological decompensation in certain individuals to the point that those individuals are unable to comprehend their current life situations and may be incompetent; that each has an understanding that Miller suffers from symptoms typically associated with post-traumatic stress and his history suggests he has had problems with depression throughout; that individuals in similar circumstance are susceptible to the effects of physical isolation like the conditions of SMU II; and based on information concerning the conditions of confinement and the concerns expressed by the court in *Comer*, further evaluation of Miller is warranted to ascertain whether his psychological conditions have deteriorated to the point that he is incompetent to be executed or able to waive all appeals.

These declarations are not meaningful evidence that Miller is not currently competent. Nor do they show that Miller's decision to forgo further proceedings is not "the product of a free and deliberate choice." *Comer*, 215 F.3d at 917.[2] Neither Dr. Morris nor Dr. Morenz has examined Miller since 1998 and their statements about the possible deterioration of his mental condition during incarceration at SMU II are purely speculative. *See Brewer v. Lewis*, 989 F.2d 1021, 1025 (9th Cir. 1993) (opinions by doctors who never met petitioner and by physician who examined and found him competent several years before but speculates, based on information not available at that time, that condition may have deteriorated is inconclusory and insufficient to outweigh substantial evidence demonstrating competence). While Jones may have seen him, she is not a physician and her views are not supported by any objective evidence in the record. *Cf. Vargas*, 159 F.3d at 1170 (new evidence of illnesses not previously diagnosed and medications not previously required tends to prove that mental condition has deteriorated since a prior competency determina-

tion). As in *Baal* and *Brewer*, this conclusory evidence is insufficient to outweigh the state court's determination and the October 18, 2000 examination and report.

I therefore agree with the district court, that Jones has not met the threshold showing of standing as "next friend" to support federal court jurisdiction to issue a stay. Accordingly, I would affirm dismissal of the petition and dismiss the request for a stay as moot.

---

**2.** I assume, without needing to decide, that *Comer* (from which I partially dissented) applies to this case which involves a petitioner's

decision not to file a federal habeas decision as distinguished from a decision to withdraw a pending appeal.