**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-20756

RAMON MATA, JR.,

Petitioner-Appellant,

VERSUS

GARY JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

April 17, 2000

Before WIENER, PARKER and DENNIS, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Petitioner, Ramon Mata, Jr. ("Mata") appeals the dismissal of his Petition for Writ of Habeas Corpus. We reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

In 1986, Mata, a Texas prison inmate, was convicted of capital murder for killing a female prison guard with whom he claimed to be romantically involved. He was sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence in 1992. *See Mata v. State*, No. 69,632 (Tex. Crim. App. Nov. 4,

1

1992)(unpublished). After exhausting his state remedies, Mata filed a federal Petition for Writ of Habeas Corpus on September 18, 1995. The district court denied relief. This court reversed and remanded Mata's Sixth Amendment fair trial claim for an evidentiary hearing. *See Mata v. Johnson*, 105 F.3d 209 (5th Cir. 1997). In July, 1998, as the parties were preparing for the evidentiary hearing on the merits of the fair trial claim, Mata wrote a letter advising the district court that he wished to abandon his collateral attack on his conviction and sentence and have an execution date set.[1] After Mata confirmed his decision in a second letter, the district court dismissed the habeas petition without ruling on the question of Mata's competency. Mata's attorneys appealed on his behalf, raising the issue of Mata's competence to waive his appeal, and this court remanded the case for a retrospective determination of Mata's competency. On August 3, 1999, the district court entered Further Findings of Fact, concluding that Mata was competent on July 16, 1998 when he confirmed his decision to waive collateral review, on December 17, 1998, when he asked to reinstate collateral review and on July 25, 1999, when he advised the court that he had again decided to abandon his appeal. We granted Mata a Certificate of Probable Cause to appeal a single issue: whether the district court conducted a constitutionally adequate fact-finding inquiry to make

---

[1]Although Mata's July 1998 decision to drop his appeal is the focus of this appeal, Mata has written letters to the court, his lawyers and the state dropping and later reinstating his appeals on no fewer than eight separate occasions since his conviction in 1986. *See infra*, pp. 13-14.

2

a reliable determination of Mata's competency to abandon collateral review of his capital murder conviction and sentence.

## II. ANALYSIS

### A. Standard of Review

In considering a federal habeas corpus petition presented by a petitioner in state custody, we review the adequacy of the fact-finding procedure, an issue of law, *de novo. See Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995). The accuracy of the district court's factual conclusion concerning Mata's competence is not before us in this appeal.

### B. Competency Determinations that Courts Have Found Adequate

We begin our analysis by examining the Supreme Court's guidance provided by *Rees v. Peyton*, 384 U.S. 312 (1966).

In *Rees,* a petitioner directed his counsel to withdraw his petition for certiorari and forgo any further attacks on his conviction and death sentence. *Id.* at 313. The Supreme Court remanded the case to the district court to make a determination as to Rees's mental competence, noting that it would be appropriate to subject Rees to psychiatric and other medical examinations. *Id.* at 314. The Supreme Court instructed the district court to "hold such hearings as it deems suitable, allowing the State and all other interested parties to participate should they so desire[.]" *Id.* The question presented to the district court was whether Rees has the "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease,

3

disorder, or defect which may substantially affect his capacity in the premises." *Id.*

We glean two conclusions from the Supreme Court's *Rees* opinion. First, the directive to hold "such hearings as it deems suitable," *Rees*, 384 U.S. at 314, clearly affords the district court a measure of discretion in determining the type and extent of procedures necessary to decide the issue of competency. Second, there is a presumption that psychiatric and other medical examinations will be included in the decision making process.

Following *Rees*, this circuit affirmed a district court's determination that a petitioner was competent to abandon collateral review of his Texas capital murder conviction and death sentence. *See Rumbaugh v. Procunier*, 753 F.2d 395, 396 (5th Cir. 1985). Applying *Rees, Rumbaugh* set out a three part test directing the district court to determine (1) whether that person suffers from a mental disease, disorder, or defect; (2) whether a mental disease, disorder, or defect prevents that person from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder, or defect prevents that person from making a rational choice among his options. *See Rumbaugh,* at 398. The record showed that prior to finding Rumbaugh competent, the district court held a preliminary hearing to decide the necessary proceedings under the circumstances. *See id.* at 397. The district court then ordered that Rumbaugh be examined by a team of psychiatrists and psychologists. *See id.* These mental health professionals submitted written reports to the court and the

4

parties.  *See id.*  The court held a two-day evidentiary hearing, at which four mental health experts testified.  *See id.*  Rumbaugh also testified about his desire to abandon his appeals.  *See id.*  Only after this full opportunity to develop the facts regarding Rumbaugh's competence, did the district court make its ruling.

Recently, the Eleventh Circuit affirmed a district court's grant of a habeas petitioner's request to dismiss his attorney and to dismiss his collateral attack on his death sentence with prejudice.  *See Ford v. Haley*, 195 F.3d 603 (11th Cir. 1999). Before acting on Ford's *pro se* request, the magistrate judge held two evidentiary hearings.  *Id.* at 611.  At the first hearing, the petitioner appeared in person and the magistrate judge inquired into the petitioner's decision and observed his mental condition. *See id.*  After the hearing, the magistrate judge examined the petitioner's prison medical records and appointed a psychiatric expert suggested by petitioner's counsel.  *See id.*  After the expert evaluated the petitioner and filed a written report, the magistrate judge appointed, at the request of petitioner's counsel, a neurologist to examine the petitioner.  *See id.* at 612.  At the second evidentiary hearing, both the psychiatrist and the petitioner testified.  *See id.*  Portions of the petitioner's testimony raised concerns which prompted the psychiatrist to request a second opportunity to examine the petitioner.  *See id.* at 613.  The magistrate judge granted the request, and the psychiatrist filed a supplement to his earlier written evaluation. *See id.*  In response to the psychiatrist's conclusion that the

5

petitioner was competent to abandon collateral review, petitioner's counsel submitted the mental health evaluation of the neurologist, who concluded that Ford was not competent to abandon his appeal. *See id*. at 614. The magistrate judge spoke once more with the petitioner by telephone. *See id.* The magistrate judge then made a report and recommendation to the district court, concluding that Ford was competent to dismiss his appeal. The district court adopted that recommendation after an independent review of the evidence. *Id*. at 614-15.

While *Rumbaugh* and *Ford* afford two examples of constitutionally adequate fact-finding inquiry into the competency of a petitioner to abandon collateral review in a capital case, they do not directly answer the question presented to us. In this case, we must first ascertain the boundaries of the district court's discretion in fashioning procedures constitutionally adequate to be used in such a competency proceeding and second we must determine whether the district court acted within those boundaries in this case.

## C. Constitutionally adequate procedures

Although we have located no controlling precedent, we find that jurisprudence developed in the context of waiver of due process safeguards and related competency questions in criminal trial proceedings instructive. We start from the proposition that the conviction of a legally incompetent[2] defendant violates

---

[2] The competency standard for pleading guilty or for standing trial is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational

constitutional due process. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966). A habeas petitioner may, on collateral review of his state conviction, obtain relief if he can show that the state procedures were inadequate to ensure that he was competent to stand trial, for example if the trial court failed to conduct a competency hearing. *See Carter v. Johnson*, 131 F.3d 452, 459 n.10 (5th Cir. 1997)(citing *Pate v. Robinson,* 383 U.S. 375). A state court must conduct an inquiry into the defendant's mental capacity *sua sponte* if the evidence raises a bona fide doubt as to competency. *See id*. In determining whether there is a "bona fide doubt" as to the defendant's competence, the court considers: (1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency. *See Davis v. Alabama*, 545 F.2d 460, 464 (5th Cir. 1977). If the trial court received evidence, viewed objectively, that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial. *See Carter*, 131 F.3d at 459 n.10.

Assuming, *arguendo*, that a court has not received evidence

---

understanding' and a 'rational as well as factual understanding of the proceedings against him[.]'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993)(quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). While that standard differs from the *Rees* competency standard at issue in this case ("capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation"), both standards inquire about the discrete capacity to understand and make rational decisions concerning the proceedings at issue, and the presence or absence of mental illness or brain disorder is not dispositive. *Compare Rumbaugh*, 753 F.2d at 398 *with Drope v. Missouri*, 420 U.S. 162, 176 (1975).

raising a bona fide doubt as to competency, Supreme Court jurisprudence nonetheless mandates that courts indulge every reasonable presumption against waiver of fundamental constitutional rights. *See Hodges v. Easton*, 106 U.S. 408, 412 (1982). *Johnson v. Zerbst*, 304 U.S. 458 (1938), the classic case delineating the standard for measuring an effective waiver of a constitutional right, requires that a waiver be an "intentional relinquishment or abandonment of a known right." The Supreme Court refined the *Johnson* standard in *Brady v. United States*, 397 U.S. 742 (1970), by requiring that valid waivers be not only voluntary but also "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. The cases draw no distinction between waiver of the right to remain silent during interrogation, the right to confer with counsel, the right to representation by competent counsel at trial, the right to contest accusations of criminality through a plea of not guilty, the right to trial by jury and the right to be present at trial. *See United States v. Garcia*, 517 F.2d 272, 276 (5th Cir. 1975). From the courts' applications of these constraints to the waiver of a wide range of constitutional protections, we infer that similar constraints are appropriate in the case at bar.

Applying the rationale employed in *Pate* and *Carter* to the question of whether a death row inmate is competent to drop his collateral attack on his conviction and sentence, we conclude that a habeas court must conduct an inquiry into the defendant's mental capacity, either *sua sponte* or in response to a motion by

8

petitioner's counsel, if the evidence raises a bona fide doubt as to his competency. *See id.* The extent and severity of the petitioner's history of mental health problems which have been brought to the court's attention influence the breadth and depth of the competency inquiry required. In *Drope v. Missouri*, 420 U.S. 162 (1975), a criminal defendant claimed that he had been deprived of due process of law by the failure of the trial court to order a psychiatric examination to determine his competence to stand trial for forcible rape of his wife, a capital offense. Drope's attorney moved for a continuance of the trial "in order that petitioner might be examined and receive psychiatric treatment." *Id.* at 164. Treatment had been suggested by a psychiatrist who had examined petitioner at his counsel's request and whose report was attached to the motion. *See id.* at 165. The trial court denied the continuance. At trial, Drope's wife testified that Drope had tried to choke her the night before the trial commenced. The second morning of trial, Drope attempted suicide by shooting himself in the abdomen. The trial judge denied Drope's counsel's motion for mistrial, finding that Drope had waived his right to be present at his capital trial, because his absence "was due to his own voluntary act in shooting himself." *Id*. at 902. The Supreme Court reversed, concluding that "when considered together with the information available prior to trial and the testimony of petitioner's wife at trial, the . . . suicide attempt created a sufficient doubt of his competence to stand trial to require further inquiry on the question." *Id*. at 180. *Drope* teaches that,

in order to adequately protect the petitioner's due process rights, "the correct course was to suspend the trial until [a psychiatric] evaluation could be made." *Id.*

Following *Drope*, the Fifth Circuit has held that a suicide attempt, by itself, is not necessarily sufficient to create "reasonable cause" for a competency hearing. *State v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995). Instead, that evidence must be weighed in conjunction with all other evidence presented with respect to a defendant's mental stability and competence. *See id.*

The opportunity for face-to-face dialogue between the court and the petitioner and the ability of the court to personally observe the petitioner is likewise important to the equation. The Supreme Court held that Drope's absence from trial after the suicide attempt bore on its analysis, in that "the trial judge and defense counsel were no longer able to observe him in the context of the trial and to gauge from his demeanor whether he was able to cooperate with his attorney and to understand the nature and object of the proceedings against him." *Drope*, 420 U.S. at 181. The Fifth Circuit has instructed that a district court, faced with a criminal defendant who wishes to waive his right to a conflict-free defense attorney, should "follow a procedure akin to that promulgated in rule 11 [of the Federal Rules of Criminal Procedure] whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record." *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). The trial court was directed to "scrupulously" and "carefully" evaluate the

10

defendant's effort to waive his constitutional rights and to "actively participate in the waiver decision." *Id.* at 277. "As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation." *Id.* at 278. The court should seek to elicit a narrative response from the defendant that he has been advised of his rights, that he understands the details and has discussed the matter with his attorney, and that he wishes to waive his constitutional protections. *See id.*

The district court, of course, retains discretion to determine the best course of action in each particular case. For instance, in some cases an expert report already in the record may be sufficiently current that a new examination is not necessary, or a court may be able to decide the issue on documents without taking live testimony. In any event, the procedures employed must satisfy basic due process concerns. In sum, if the evidence before the district court raises a bona fide issue of petitioner's competency to waive collateral review of a capital conviction and death sentence, the court can afford such petitioner adequate due process by ordering and reviewing a current examination by a qualified medical or mental health expert, allowing the parties to present any other evidence relevant to the question of competency and, on the record and in open court, questioning the petitioner concerning

11

the knowing and voluntary nature of his decision to waive further proceedings.

**D. Adequacy of the Procedures Employed in Mata's Case**

1. Details of the procedures employed by the district court

We now turn to the issue of whether the district court acted within these due process boundaries in resolving the question of Mata's competency. Mata wrote letters to the court, to his lawyers and to the prosecutor dropping, then later reinstating, his appeals in state court in 1991 and in February and May of 1994. In 1994, the state judge set a competency hearing and appointed Dr. Allen Childs, M.D., a psychiatrist, and Dr. Murphey, a psychologist, to evaluate Mata. After the evaluations were completed, but before the hearing in state court, Mata again changed his mind and decided to continue his appeals, whereupon the state judge canceled the competency hearing. After his state habeas petition was denied in January 1995, Mata continued to vacillate between pursuing post conviction relief in federal court and dropping his appeals. In 1996, the district court initially denied Mata's first federal habeas petition. In 1997, we reversed that decision in part and remanded Mata's Sixth Amendment fair trial claim for an evidentiary hearing. *See Mata v. Johnson*, 105 F.3d 209 (5th Cir. 1997). As the parties were preparing for the evidentiary hearing on the merits of the remanded claim, Mata wrote a letter to the district court abandoning his collateral attack. On July 10, 1998, Mata's attorney filed a Motion to Declare Petitioner Incompetent or, in the Alternative, to Hold a Competency Hearing. The motion related

12

that Mata had thirty years of documented mental health problems, had made repeated suicide attempts and had engaged in numerous hunger strikes while incarcerated on death row. The motion requested that the district court declare Mata incompetent based on reports of the mental health experts appointed by the state court in 1994 who had concluded that Mata was not competent to drop his appeals, as well as extensive medical records from the Texas Department of Criminal Justice. The motion requested, in the alternative, that the district court hold a hearing to determine Mata's competency. The district court allowed oral argument on the motion, at which the district court characterized Mata's attorney's position as "trendy and trashy psycho-analytical analysis." The district court then entered an order informing Mata that if he did not desire to abandon his habeas action, he must inform the court by July 24, 1998, and had it delivered directly to Mata, who had not been present at the hearing. On July 16, 1998, Mata filed a second letter with the court asking that his habeas action be dismissed. On July 22, 1998, the district court dismissed Mata's petition for writ of habeas corpus without ruling on the competency motion.

Mata's attorneys appealed on his behalf. On December 17, 1998, Mata indicated his desire to reinstate his federal collateral review. On February 3, 1999, we remanded the case to the district court for a determination of Mata's competence on July 16, 1998 and December 17, 1998, requiring the district court "to set forth not just its conclusion but its findings and reasoning in sufficient

13

detail to allow meaningful review by this court." *Mata v. Johnson*, No. 98-20756 (5th Cir. 1999) (unpublished). On remand, the Respondent filed a motion requesting that the court appoint a disinterested expert to evaluate Mata's competency (1) at the present time, (2) in December 1998, and (3) in July 1998. Although Respondent advised the court that the motion was opposed, Mata's attorneys filed nothing further on the issue. Mata again wrote to the district court on July 25, 1999, urging the court grant the Respondent's motion for a competency exam, but stating that he did not want to continue with his appeals and wished to be executed as soon as possible.

On August 3, 1999, the district court entered findings of fact, without benefit of an expert examination of Mata or any further evidence or hearings. The district court found that Mata was competent on July 16, 1998, based on the 1985 expert reports finding him legally competent to stand trial for capital murder. The district court stated that [s]ince that time, nothing indicates that he has become incompetent. The psychological reports in the record support Mata's competence." The district court made no mention of Dr. Childs's report and conclusion to the contrary. The district court went on to find Mata competent on December 17, 1998, when he asked to reinstate his appeal, and July 25, 1999, when he again wrote the district court abandoning his legal attacks on his sentence.

2. Evidence raising bona fide question of Mata's competence

The record contains evidence that Mata suffers from an organic

14

brain disorder resulting from closed head injuries and has a history of mental health problems both before and after his capital murder trial. Since 1986, physicians at the Texas Department of Criminal Justice have prescribed numerous psychotherapeutic and antidepressant medications to alleviate the symptoms of mental illness.[3] He has made numerous suicide attempts and engaged in several hunger strikes. There is a report from Dr. Allen Childs detailing his findings in 1994 that Mata suffers from delusional disorder with paranoid and erotomanic features and borderline personality organization. Dr. Childs opined that Mata's efforts at suicide as well as his delusions of seeing and talking with his murder victim are genuine. Dr. Childs also wrote a letter in 1998, based on his examination of Mata in 1994, stating that Mata was not competent to drop his appeals. We conclude that all the evidence presented with respect to Mata's mental stability and competence is sufficient to create "reasonable cause" for a competency hearing. *See State v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995).

3. Current examination by an expert

The district court based his fact finding on the expert examination performed twelve years earlier in conjunction with Mata's original trial. The lapse of time, coupled with extensive evidence of change in Mata's condition, lead us to conclude that

---

[3] The medical records attached to the original motion for competency examination note prescriptions for Asendin, Sinequan, Triavil, Mallaril, Haldol, Tofranil, Triavil, Elavil, Desyrel, and Zoloft. *See generally* PHYSICIANS' DESK REFERENCE (Medical Economics Data Production Co. 48th ed. 1994).

15

the district court did not base its decision on a current examination by an expert.

4. Opportunity for the parties to present other evidence

Except for the attachments to the original motion, no evidence was presented to the court on the issue of Mata's competence. The court never afforded the parties the opportunity to present testimony or documentary evidence. The court's statement that nothing indicates that Mata had become incompetent since his trial in 1985 is meaningless in the absence of a hearing or even a summary judgment-type procedure in which the parties could develop the record. We therefore find that the district court did not afford the parties a meaningful opportunity to present evidence relevant to the question of Mata's competency to discontinue his appeals.

5. District court dialogue with Mata

Mata has not personally appeared before the district court since the question of his competency to drop his appeal arose. The district court received some hand written notes from Mata, but there has been no face-to-face dialogue between the court and the petitioner and no opportunity for the court to personally observe Mata.

6. Proceedings inadequate

Because the evidence submitted by Mata raised a bona fide question that he lacked competency to drop his appeal, and because there is no current evaluation of Mata's competence by a medical expert, no opportunity for the parties to present evidence, and no

16

appearance by Mata in open court, we conclude that the proceedings in this case failed to afford the minimum due process guaranteed by the Constitution.

### III. CONCLUSION

We do not imply that a petitioner is free to manipulate the collateral review process by endlessly vacillating between dropping and reinstating his capital appeal. We are sympathetic to the district court's frustration over the length of the appeals process, frustration that was heightened by the district court's perception that Mata was playing for time and his attorneys were maximizing their fees in this case. Nevertheless, the answer is not to eviscerate the constitutional protections for state habeas petitioners, but to promptly afford the parties the opportunity to procure and present evidence on the question of competency, resolve the factual questions presented and allow the petitioner, if found competent, to choose his course of action. Once a reliable, constitutionally adequate competency determination is made, a district court would certainly be justified in presuming that a petitioner continues to be competent. However, such a presumption cannot survive a twelve year gap, coupled with the extensive evidence of incompetency in this record.

Based on the foregoing, we reverse the district court's order dismissing the petition for habeas corpus and remand for proceedings consistent with this opinion. Further, we direct that this case be reassigned to a different judge, to avoid the appearance of bias arising from the district court's remarks in

17

this record.  *See Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997).

REVERSED and REMANDED, WITH INSTRUCTIONS.