United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2007

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

m 06-70042

WILLIAM A. MURRAY,

Petitioner-Appellant,

VERSUS

NATHANIEL QUARTERMAN,

DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
m 3:01-CV-2089

Before SMITH, WIENER, and OWEN,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

William Murray was convicted of capital murder and sentenced to death. The district court denied habeas corpus relief but granted a certificate of appealability. We affirm.

I.

Murray entered the home of ninety-three-year-old Rena Ratcliff and looked through her home and bedroom for valuables. Ratcliff woke up while Murray was in her room and confronted him. Murray hit and choked Rat-

cliff, eventually raping and killing her. He was convicted by a jury and sentenced to death.

## II.

"Under [the Antiterrorism and Effective Death Penalty Act of 1996], a federal court may not issue a writ of habeas corpus for a defendant convicted in state court unless the state court's adjudication '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parr v. Quarterman*, 472 F.3d 245, 252 (5th Cir. 2006) (quoting 28 U.S.C. § 2254(d)-(1)-(2)). "[W]e review the district court's findings of facts for clear error and its conclusions of law de novo, applying the same standards to the state court's decision as did the district court." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004) (citing *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001)).

"A decision is contrary to clearly established Federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) (citing 28 U.S.C. § 2254-(e)(1)).

### A.

Murray first asserts that the state trial court's decision not to require a psychological examination to determine whether Murray was competent to waive his appeal was objectively unreasonable. We disagree.

The trial court had a considerable amount of evidence relating to Murray's competence. Murray's counsel stated Murray was competent to waive his appeal; Murray testified at the waiver hearing that he was competent to waive his appeal; one expert told the court that, based on an informal evaluation, he had no reason to suspect Murray was incompetent, though he was not sure, because he had not been asked to do a formal evaluation; and one expert provided a pretrial report stating Murray was competent to stand trial five months before the waiver hearing.

Murray claims his own testimony should have alerted the trial court to the need for an examination. In his testimony, he claimed that his decision was based on emotion, not rational reasoning, as shown by the fact he gave unfounded emotional reasons for his waiver: He said he wanted to "get it over" for the victim's family's sake, even though he knew it was a "mistake." Moreover, he claims that his major depression and suicidal ideation should have caused the court to order a psychological examination.

In *Mata v. Johnson*, 210 F.3d 324 (5th Cir. 2000), we analyzed when a federal district court must obtain a psychological examination for a defendant waiving his right to continue habeas appeals. In that case, the district court did not require an examination, and we examined whether the evidence raised a *bona fide* issue of competence. *Id.* at 330. The record contained evidence that raised a *bona fide*

question of competence, because there was evidence that the defendant suffered from an organic brain disorder, had made numerous suicide attempts, and had a delusional disorder. *Id.* at 332. The district court erred by relying on an expert report that was twelve years old. *Id.* Also, in that case the defendant did not appear before the court for the court to observe his behavior personally. *Id.* at 333.

Having carefully reviewed Murray's brief and supporting documents, we conclude that the state trial court did not base its decision on an unreasonable determination of the facts in failing to require a psychological exam. The evidence in the record did not raise a question of Murray's competence. His depression and suicidal ideation are unlike the repeated suicide attempts and documented delusional disorder in *Mata*. The five-month-old expert report stating Murray was competent to stand trial is quite different from the twelve-year-old report in *Mata*; nothing indicates the report in this case was insufficiently current. Finally, the state court examined Murray, personally observing his behavior, and concluded he was competent. The federal district court did not err in finding that the state court's failure to require a psychological exam was not unreasonable.

### B.

Murray urges that the Texas Court of Criminal Appeals ("TCCA") denied him procedural due process because it used a postcard to deny his motion for rehearing of its affirmance of his conviction. He also asserts that he should have been able to withdraw his waiver of his right to appeal because his motion for rehearing was made only a few months after he had requested permission to waive his right to appeal.

Murray filed a motion that stated that he had informed his counsel that he wanted to waive his right to appeal. Three months later, the TCCA affirmed his sentence, noting he had waived his right to appeal. About two weeks later, Murray moved for rehearing, stating he had changed his mind about waiving. The TCCA denied the motion for rehearing with a postcard that noted that three of the nine members of the court dissented from the denial.

Murray claims that the TCCA's use of a postcard to deny his motion for rehearing was "the essence of arbitrary action" and that the refusal to permit him to withdraw his waiver was an abuse of discretion that affected "the fundamental fairness of the trial." Yet, Murray has not shown that the TCCA's procedure was contrary to any clearly established federal law as determined by the Supreme Court. He provides no law stating that defendants have a right to a rehearing or that they have a right to have their rehearing denied with a written opinion that is not on a postcard. The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," *Dowling v. United States*, 493 U.S. 342, 352 (1990), and the procedure followed here does not fit into that narrow category, because it does not violate "those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Id.* at 353 (internal quotations omitted).

### C.

Murray contends that the federal district court erred in denying his claim that he was denied effective assistance of counsel at trial and on appeal. Murray admits that he did not exhaust his state remedies, so he is not entitled

to relief under § 2254(b)(1)(A). But, he claims that his failure to exhaust his claims does not limit relief available under § 2254(b)-(1)(B).[1]

To qualify for an exception under § 2254-(b)(1)(b), a prisoners must "'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'"[2] "To prove 'cause' [Murray] must establish that some 'external force' impeded the defense's efforts to comply with the procedural rule." *Id.* at 756 (citing *Coleman,* 501 U.S. at 753). "To meet the 'miscarriage of justice' test, [Murray] needed to supplement his constitutional claim with a colorable showing of factual innocence, i.e., 'a fair probability

that, in light of all the evidence, including that . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.'" *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 & n.5 (1992) (citations and quotations omitted)). Murray has not met either of these requirements, and we cannot discern any argument in his brief that appears designed to do so. Because he has not established that he qualifies for an exception to the exhaustion requirement, he is not entitled to relief on the basis of ineffective assistance.

## D.

Murray posits that Texas's method of selecting who is prosecuted for the death penalty is objectively unreasonable under the Fourteenth Amendment because it gives prosecutors excessive discretion and permits similarly situated criminals to be treated differently. As pointed out in the proceedings in the district court, however, the Supreme Court has rejected the foundation for this claim. *See Gregg v. Georgia*, 428 U.S. 153, 199 (1976). Murray's assertion is meritless.[3]

---

[1] 28 U.S.C. § 2254(b)(1) states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears thatSS

(A) the applicant has exhausted the remedies available in the courts of the State ; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[2] *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Murray argues that we should abandon this requirement based on the statutory language and public policy reasons. Because we are bound by our past decisions, such as *Bagwell*, we do not abandon that requirement today.

[3] In *Gregg*, the Court characterized the type of argument Murray asserts here:

The petitioner's argument is nothing more than a veiled contention that *Furman* indirectly outlawed capital punishment by placing totally unrealistic conditions on its use. In order to repair the alleged defects pointed to by the petitioner, it would be necessary to require that prosecuting authorities charge a capital offense whenever arguably there had been a capital murder and that they refuse to plea bargain with the defendant. If a jury refused to convict even though the evidence supported the charge, its verdict would have to be reversed and a verdict
(continued...)

4

### E.

Murray avers that the state court's failure to inform jurors on the effect of the parole law violated equal protection and due process. Our precedent, however, precludes his argument, because we have consistently held that a defendant does not have a due process right to present parole eligibility information to the jury. *Thacker v. Dretke*, 396 F.3d 607, 617 (5th Cir. 2005).[4] Regarding his equal protection argument, Murray presents no reason that the state court's "adjudication resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court," so he cannot prevail on this claim.

AFFIRMED.

---

[3](...continued)
of guilty entered or a new trial ordered, since the discretionary act of jury nullification would not be permitted. Finally, acts of executive clemency would have to be prohibited. Such a system, of course, would be totally alien to our notions of criminal justice.

*Gregg*, 428 U.S. at 199 n.50.

[4] *Simmons v. South Carolina* is inapplicable. "*Simmons* requires that a jury be informed about a defendant's parole ineligibility only when (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole." *Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir. 2000). Because Murray could be paroled after forty years, he is not legally ineligible for parole.