# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-70024

PERRY ALLEN AUSTIN,

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2015

Lyle W. Cayce
Clerk

　　　　Petitioner–Appellant,

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

　　　　Respondent–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-2387

Before OWEN, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

An application for a certificate of appealability (COA) filed by Perry Allen
Austin, a Texas death-row inmate, is presently before the court. Austin,
without the participation or prior knowledge of his appointed counsel,
indicated to our court that he desires to withdraw his appeal. We remand to
the district court for the limited purpose of making findings as to whether

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this order should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 13-70024

Austin is presently competent to waive further appeals of his conviction and death sentence, and if Austin is found to be competent, whether such waiver is knowing and voluntary.

## I

We briefly recount the facts pertaining to Austin's conviction, sentencing, and post-conviction proceedings. In September of 2000, while incarcerated for another offense, Austin contacted a Houston police sergeant, offering in a letter to confess to the murder of D.K., a minor, if Austin would be charged with capital murder and guaranteed the death penalty. D.K. had disappeared in 1992, and his remains were found the following year. Austin was a suspect in D.K.'s disappearance and murder, but the State did not charge Austin until after receiving the letter in 2001.

Although Austin was initially appointed counsel, he wrote a letter to the state trial court asking to waive counsel and plead guilty and indicated that he would accept a death sentence and would waive all appeals. The trial court held a *Faretta*[1] hearing and granted Austin's motion to proceed pro se. Austin pleaded guilty to capital murder. During the punishment phase, Austin presented no witnesses but briefly cross-examined one witness for the State. In his closing argument, Austin addressed the jury; he stated that he would commit further acts of violence in prison and that there were no mitigating circumstances. The jury answered Texas's special issues such that the state district court was required to enter a sentence of death under Texas law.

The trial court held a second *Faretta* hearing in which Austin waived his right to counsel on direct appeal and in state habeas corpus proceedings. Austin's conviction and sentence were automatically appealed to the Texas

---

[1] *Faretta v. California,* 422 U.S. 806 (1975).

No. 13-70024

Court of Criminal Appeals (TCCA) under Texas law.  He filed no brief, and the TCCA affirmed his conviction.[2]

The state trial court set an execution date of September 8, 2003.  On September 2, 2003, Austin filed a motion to have habeas counsel appointed and indicated he wished to pursue post-conviction relief.  The TCCA denied Austin's motion to file an untimely writ of habeas corpus.[3]

On June 21, 2004, Austin timely filed a federal habeas petition.  The State alleged that Austin's claims were procedurally defaulted, but the federal district court held that the TCCA had applied a new rule, which could not be the basis for a procedural default.  However, on August 21, 2012, the federal district court granted the State's motion for summary judgment on all claims set forth in Austin's habeas petition.  The district court denied a COA.

Austin then filed an application for a COA in this court on December 2, 2013.  Briefing on the application is complete.

## II

On September 17, 2014, this court received a letter from Austin, acting without his appointed counsel, in which he requested to withdraw his appeal. The full text of this typed letter states:

> Greetings,
>
> I am a Death Row prisoner currently residing on the Polunsky Unit in the Texas Department of Criminal Justice while my appeals makes [sic] its [sic] way through the court system.

---

[2] *Austin v. State*, No. 74732, 2003 WL 1799020, at *1 (Tex. Crim. App. Apr. 2, 2003) (not designated for publication).

[3] *Ex Parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004) (not designated for publication), *available at* http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=a0dc5220-2918-4cff-a1fc-57bb35291ce7&coa=coscca&DT=OPINION&MediaID=852244e8-e3f3-4d2d-b424-7c05a03bb9f3.

No. 13-70024

I wish to drop my appeals but can't seem to get any type of response nor cooperation. I have informed my attorney of my wishes and according to him, to drop my appeals m[a]y actually prolong the date of my execution because the courts would then request a competency hearing. If there is any way I could waive the compentency [sic] hearing I would gladly do it. I was given a competency hearing just before my trial, and another just after, but before my direct appeals by the trial court. I was found competent in both of those instances and see no reason for another one.

I have just recently completed the beginners course of the Blackstone Paralegal Institute with a[n] overall score of 99.51%. This is hardly a sign of incompetence. My TDCJ IQ score was 123 and my TDCJ EA Score was 12.9. Again, this is hardly a sign of incompetence. I do have a history of mental health issues, but nothing that can't be treated satisfactorily with medication and counseling. I chose to abstain from medication and counseling though and so see no reason why my mental health should keep me from dropping my appeals. Also, I recently read a court case in which your court ruled that a person could be mentally ill, but still be competent to be executed because that person was competent during their trial. In that case, that should also be the case in my case/appeals.

Should the information my attorney gave me be correct and by dropping my appeals I could be prolonging my appeals, then I would like to request that you affirm my death sentence, deny my appeals, at which time I would then instruct my attorney to cease all work in my appeals. I would then request the trial court to set an execution date at its' [sic] earliest possible date.

Thank you for your consideration and I look forward to a favorable response.

Sincerely,

/s/

We requested that counsel for Austin and for the State respond to Austin's request to withdraw his appeal.

On October 9, 2014, Austin's counsel submitted a response that stated that Richard Bourke, one of Austin's two attorneys, had met with Austin on

No. 13-70024

September 29, 2014. The response said that during the meeting, Austin expressed to counsel that he wished to be executed promptly and desired to end his appeals. Counsel opined in the response that Austin continues to suffer from serious mental illness, and Austin's contentions in his application for a COA before our court include Austin's assertion that he was incompetent to stand trial for D.K.'s murder and incompetent to waive trial counsel. In the response that this court requested to Austin's letter seeking to waive further appeals, counsel stated that "[n]othing in Mr. Austin's letter or the interview . . . causes undersigned counsel to [abandon] the legal and factual propositions advanced in" the habeas petition or COA application, but counsel acknowledged that they were "[c]onstrained by Mr. Austin's expressed wishes." Counsel also indicated that "[c]onsistent with Mr. Austin's expressed wishes," counsel would file a motion to expedite consideration of the COA application. After the State filed its response to Austin's September 17, 2014 letter, counsel for Austin filed a motion for expedited consideration on November 14, 2014.

Austin's letter requesting that we allow him to withdraw his appeal conflicts with the motion to expedite consideration of the COA application because, if this court were to grant a COA as to one or more of the issues raised in Austin's petition for a COA, then his appeal would continue, contrary to Austin's September 17, 2014 request to end further appeals. On December 11, 2014, we requested clarification from Austin's counsel as to whether Austin's direct request to end appeals had been withdrawn.

In a December 18, 2014 filing, one of Austin's attorneys stated that he had last spoken to Austin during counsel's September 29, 2014 visit to the prison in which Austin is confined. Accordingly, the December 18 filing simply reiterated that during the September meeting, Austin both "advised that he did not wish to withdraw his request to drop his appeals" and gave "instructions to file the motion for expedited consideration" of his application

5

No. 13-70024

for COA.  Counsel has not had further communication with Austin since that meeting.

## III

In *Rees v. Peyton*, the Supreme Court held that when a death-row inmate seeks to withdraw his habeas petition and forgo further legal proceedings, the inmate must be competent to do so.[4]  In *Rees*, a petition for certiorari had been filed in the Supreme Court when Rees sought to end his appeals.[5]  The Court noted that the determination of whether Rees should be allowed to withdraw his certiorari petition ultimately rested with the Court itself.[6]  Although the Court expressly retained jurisdiction, it determined that the district court where Rees's habeas proceedings began should "make a judicial determination as to Rees' mental competence and render a report on the matter."[7]  The question presented to the district court was whether Rees "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."[8]

In *Mata v. Johnson*, this court held that when a death-row inmate seeks to withdraw his habeas petition, "a habeas court must conduct an inquiry into the defendant's mental capacity, either *sua sponte* or in response to a motion by petitioner's counsel, if the evidence raises a bona fide doubt as to his competency."[9]  This court noted that the "extent and severity of the petitioner's

---

[4] 384 U.S. 312, 313-14 (1966) (per curiam).

[5] *Id.* at 313.

[6] *Id.*

[7] *Id.* at 313-14.

[8] *Id.* at 314.

[9] 210 F.3d 324, 329-30 (5th Cir. 2000).

history of mental health problems which have been brought to the court's attention influence the breadth and depth of the competency inquiry required."[10]   District courts have discretion regarding the procedures they employ but, of course, must provide due process.[11]  This court indicated that a district court can afford a petitioner due process by (1) "ordering and reviewing a current examination by a qualified medical or mental health expert," (2) "allowing the parties to present any other evidence relevant to the question of competency," and (3) "on the record and in open court, questioning the petitioner concerning the knowing and voluntary nature of his decision to waive further proceedings."[12]

In the present case, at least some evidence calls into question Austin's competency to withdraw his appeal.  We order a limited remand[13] to the district court that previously considered Austin's habeas petition.  The district court should make findings as to whether Austin is presently competent to waive further appeals of his conviction and death sentence.  If the district court concludes that Austin is competent to waive further appeals, the district court should make findings as to whether that waiver is knowing and voluntary.[14]

---

[10] *Id.* at 330.

[11] *Id.* at 331.

[12] *Id.*

[13] *See Rees*, 384 U.S. at 314 (retaining jurisdiction and "direct[ing]" the district court to make a competency determination without mentioning a "remand"); *Mata*, 210 F.3d at 327 (describing the *Rees* Court's order for a competency inquiry in the district court as a "remand" even though the Court explicitly stated that it retained jurisdiction); *see also* Jon O. Newman, *Decretal Language: Last Words of an Appellate Opinion*, 70 BROOK. L. REV. 727, 734 (2005) ("A court of appeals cannot simultaneously 'retain' jurisdiction and send the case back to a district court for some further action.  Whenever the panel wants a district court to take any further action in the case, jurisdiction must be restored to the district court.").

[14] *See Mata*, 210 F.3d at 331.

No. 13-70024

\*     \*     \*

We REMAND to the district court for the limited purpose of making findings related to Austin's September 17, 2014 request to waive further appeals, as indicated above.  After the district court has made such findings, this court will proceed accordingly.  The case remains assigned to this panel.