# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70025

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2015

Lyle W. Cayce
Clerk

DANIEL LEE LOPEZ

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Having carefully reviewed defense counsel's appeal of the district court's competency decision,[1] the State's response, the transcript of the competency hearing in the district court, and the district court's Order, we conclude that the district court committed no error finding Lopez competent to waive federal

---

[1] Lopez is as resolute that Texas should carry out his capital sentence as he is that no counsel deprive him of that choice. The district court, after ascertaining competency, nonetheless granted Lopez's "motion to dismiss counsel, *effective on the conclusion of any appeal.*" (Emphasis added). This court does not address, because the State did not raise, the appropriateness of our considering this appeal by counsel who were appointed for petitioner by the district court against his will, and who have filed this appeal despite his wishes and despite the court's resolution of the *Rees v. Payton* 384 U.S. 312 (1966) issue. *Cf. Sanchez-Velasco v. Sec. of the Dept. of Corrections*, 287 F.3d 1015 (11th Cir. 2002).

No. 14-70025

habeas review in this capital case, and that he did so knowingly and voluntarily.

The Supreme Court has elaborated the legal standard we apply to assess the competency of a death row inmate to abandon further appeals of his sentence, namely "whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. at 314. Applying this standard, we have observed that "a habeas court must conduct an inquiry into the defendant's mental capacity ... if the evidence raises a bona fide doubt as to his competency," further noting that "[t]he extent and severity of the petitioner's history of mental health problems which have been brought to the court's attention influence the breadth and depth of the competency inquiry required." *Mata v. Johnson*, 210 F.3d 324, 330 (5th Cir. 2000).

The district court entered its finding of Lopez's mental competency under the *Rees* standard after questioning him directly in open court, observing his demeanor, reviewing past mental examinations, and hearing from court-appointed expert Dr. Timothy J. Proctor. We are satisfied that the inquiry conducted by the district court was constitutionally sufficient. In *Mata*, our court applied *Rees*, taking additional lesson from our court's caselaw as well as caselaw from other circuit courts to highlight examples of constitutionally adequate fact-finding into the competency of a petitioner to abandon collateral review in a capital case. We emphasized that whereas district courts retain discretion to fashion measures appropriate to each defendant — hence "in some cases an expert report already in the record may be sufficiently current that a new examination is not necessary, or a court may be able to decide the issue on documents without taking live testimony," *id.* at 331 — the following

2

No. 14-70025

measures were commended: (1) contemporaneous expert examination of a petitioner's competency; (2) expert assessment submitted in written report to the court and the parties; (3) an evidentiary hearing with full adversary opportunity to develop facts relevant to competency and to explore any expert opinion; and (4) a personal appearance by the petitioner, distinguished by a "face-to-face dialogue between the court and the petitioner" confirming the knowing and voluntary nature of the decision to waive further proceedings. *Id.* at 328-331.

The district court in the instant matter did all of the above to verify that Lopez, who had "unwavering[ly] conveyed his hope to end all legal challenges," had done so in a constitutionally adequate manner: first, appointing counsel despite Lopez's repeated "coherent, logical, and consistent" filings against federal review; second, appointing a mental health expert who "compiled a detailed history of Lopez's mental health," as well as conducted an in-person evaluation of Lopez concluding that "Lopez is competent to waive federal habeas review," believing both in a "'better'" afterlife and in the justifiability of his "'conviction and sentence'"; third, conducting an evidentiary hearing that included Lopez as well as his expert mental health evaluator, Dr. Timothy J. Proctor, whereafter the court found "that Dr. Proctor was credible in his conclusion that Lopez is competent," and also entered the following findings after direct questioning of Lopez:

> Lopez clearly understands the nature of the criminal proceedings against him to this point, his current status, the role of the court, and the possible outcomes of federal habeas review. Lopez exhibited no obvious signs of mental impairment or intellectual deficiency. Throughout his testimony, as throughout his post-judgment proceedings, Lopez was fixed and determined in his desire for the State to carry out his sentence. Lopez's testimony did not raise any concern about his competency.

No. 14-70025

We affirm that these proceedings, and the evidence presented to the district court, do not raise a bona fide doubt as to Lopez's competency.

On appeal, two arguments are asserted. First, the argument is offered that Lopez is incompetent to waive habeas review because he is wrong to think further judicial review would be unavailing. Specifically, counsel contends that Lopez's sight was impaired both by his poor vision and also by pepper spray, and therefore he did not intentionally kill Lieutenant Alexander when he swerved and struck him during a police chase. This argument fails on several grounds. Factually, the jury heard testimony and attorney argument relating to the fatal impact — and specifically, disputed facts as to Lopez's intentionality and vision — and, properly instructed as to the proof required of Lopez's state of mind, thereafter entered its verdict of capital murder.[2] Regardless, legally, we have clarified that a court's competency finding is distinct from, and must be confirmed independent of, "'legal avenues of attack'" that may exist pertaining to a sentence, here the adequacy of proof of Lopez's state of mind shown beyond a reasonable doubt at trial. *Autry v. McKaskle*, 727 F.2d 358, 363 (5th Cir. 1984) (quoting *Lenhard v. Wolff*, 443 U.S. 1306 (1979)); *see also Henderson v. Campbell*, 353 F.3d 880, 894-895 (11th Cir. 2003).[3] *Cf. United States v. Davis*, 285 F.3d 378, 384 n.6 (5th Cir. 2002) ("Whatever the merits of Davis's legal strategy, we find that Davis has the

---

[2] In district court, counsel acknowledged that the "chief issue, the central issue at trial was whether [Lopez] saw Officer Alexander and intentionally ran him over," but suggested that the jury had not heard all relevant evidence pertaining to Lopez's impaired vision. As the district court catalogues, however, the pepper spray evidence was presented to the jury. Moreover, in district court, having heard counsel characterize him as legally blind, Lopez himself explained that yes, he has "terrible vision," "but I had contacts, and I could see."

[3] At Lopez's competency hearing, the district court along with counsel comprehensively explored with Lopez his legal position, as well as his interaction with counsel about appellate and habeas options. Lopez matter-of-factly denied there is evidence that would avail him, and also affirmed his religious readiness "to move on with my life, so I could go up there."

4

right to conduct his penalty defense in the manner of his choosing…[and] if he so chooses, Davis has the constitutional right to implement his legal strategy by arguing to the jury that he should receive the death penalty."). Finally, procedurally, we note that no approved effort has been made to expand the certificate of appealability to include the argument Lopez terms "'unfactual innocence'" as a habeas ground defense counsel may pursue.

Second, error is alleged based on the district court's denial of funding for additional neuropsychologist and investigatory services. Factually, we note that counsel's statements that Dr. Proctor disregarded or failed to consider Lopez's complete mental history is incorrect. Dr. Proctor testified that he reviewed all materials sent to him by defense counsel, that his final report was based on review of almost ten thousand record pages submitted to him as well as his three-hour interview and testing of Lopez, and that in fact he paid particular attention to whether Lopez suffered from depression and had been suicidal.

Moreover, we reject the contention legally that Dr. Proctor's expert involvement, including his written report and hearing testimony subject to cross-examination, was not the "meaningful opportunity to present evidence relevant to the question of competency" required by *Mata*. To the extent that this allegation of error asserts that that opportunity contemplated in *Mata* comprehends not just one court-appointed expert evaluation, but then also a second, supplemental and "independent" review and evaluation of the first, this suggestion is made without citation to legal authority and we decline to adopt it.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order finding Lopez competent to waive federal habeas proceedings and we further order

No. 14-70025

that no further pleadings will be accepted from counsel absent leave of court supported by Lopez's election to proceed through such counsel.